# THE BALTIMORE & OHIO RAILROAD COMPANY

## *vs,*

## DAVID BRANSON.

*Employers' Liability Act: remedial; to be liberally construed; interstate commerce; painting engines with spraying machine; poisonous fumes. Evidence: weight; province of jury; objection to whole evidence; part admissible.*

The Federal Employers' Liability Act is a remedial statute, and should have a liberal construction, so as to advance the remedy proposed and correct the evils against which it was directed.                                                  p. 687

A declaration which states, in substance, that the defendant employer set the plaintiff to using a high-pressure *"paint gun"* for the spraying on of paint, without warning him of the danger from the mist of paint which he would inhale into his throat and lungs, and which he did so breathe, to his great and lasting wrong and injury, clearly states a cause of action under the principles of common law.                          p. 686

Under the Federal Employers' Liability Act, an employee having duties that relate both to interstate commerce and *intra*state commerce, may be covered by the Act if at the time of his injury he was engaged in duties pertaining to interstate commerce exclusively.                                        p. 688

Railroad employees who are engaged in painting the engines that are used in interstate commerce come under the protection of the Federal Employers' Liability Act.                p. 690

The fact that such employee was unaware of any appliance to be used with the "paint gun" to render it harmless, protects him from the charge of contributory negligence for not having used such device.                                       p. 691

Engines and cars are necessary instrumentalities in the business of interstate commerce; it is the duty of the carrier to

keep them in safe and proper repair; the work of painting the engines and cars has a substantial relation to the business of interstate commerce.                                        p. 690

Refusal of a court to strike out evidence does not constitute reversible error, where the same evidence has been previously cr subsequently admitted without objection.              p. 691

To strike out all of a witness' evidence is error, if any of it was admissible.                                         p. 693

It is the province of the jury to pass upon the weight and credibility of testimony.                            `      p. 694

*Decided May 17th, 1916.*

Appeal from the Circuit Court for Allegany County. (HENDERSON, J.)

The facts are stated in the opinion of the Court.

The following are the prayers directed by the Court to be published with the report of the case:

*Plaintiff's 1st Prayer.*—The plaintiff, by his counsel, prays the Court to instruct the jury that if they find from the evidence that the defendant, the Baltimore and Ohio Railroad Company, is and has been since the autumn of 1912, a corporation duly incorporated under the laws of Maryland, and further find that during said period the defendant was a common carrier by railroad, engaged in carrying passengers and freight from the State of Maryland into the State of West Virginia, and further find that during the period of several months prior to the 6th day of September, 1913, the plaintiff, David Branson, while in defendant's employ, and under the direction of the defendant, its officers and agents, had been operating and using a painting machine, commonly called a "gun," as is described by the witnesses, and operated by the use of air pressure, for the purpose of repainting engines of said defendant company, and further find that said painting machine, while so used by the plaintiff

was dangerous, because it threw off, scattered and disseminated into the air material in the form of spray, if the jury so find, which was poisonous or deleterious or harmful to the person operating said gun, if the jury so find, and that the said plaintiff was obliged in the operation of said machine to breathe said harmful or deleterious material, and further find that there was in existence and known to the defendant an aspirator or nose guard, or other appliance, which was then and there readily obtainable by the defendant, by which to successfully lessen or avoid the danger to the plaintiff of the deleterious or harmful spray thrown out and disseminated into the air by said gun, and that the plaintiff did not know that the inhalation or breathing of said material was harmful or injurious, and did not know while using said gun that there was an appliance to be used to protect him from the danger in using said gun, and further find that the defendant railroad company, or its officers or agents, knew of said appliance and was negligent in failing to provide such appliance for the use of the plaintiff in said work, if they find it did not provide said appliance, and further find that the plaintiff, while doing the work at the times and places aforesaid, breathed and inhaled and took into his system for said period of several months, so much of said deleterious or poisonous or harmful spray that as a result thereof the plaintiff, on or about September 6th, 1913, or after June 25th, 1913, was injured and damaged in his health, and further find that the engines, or some of them, which the plaintiff painted during said several months by the use of said painting machine or gun, were engines of the defendant regularly used by it for the purpose of carrying and transporting passengers and freight to and from the City of Cumberland, in the State of Maryland, from and to points in the State of West Virginia, and that the said injury to the plaintiff's health was due in whole or in part to the negligence of the defendant in failing to provide such appliance for the use of the plaintiff, then the plaintiff is entitled to recover in this action, and the verdict of the jury must be for the plaintiff. (*Granted.*)

*Plaintiff's 2nd Prayer.*—The plaintiff further prays the Court to instruct the jury that if they find a verdict for the plaintiff and in so finding they believe from the evidence that the accident was due entirely to the negligence of the defendant, and that the plaintiff in no manner contributed to the accident by any negligence of his own, then in estimating the damages the jury are to consider the health and condition of the plaintiff before the injuries complained of as compared with his present condition in consequence of such injuries, and whether the same are in their nature permanent, and how far they are calculated to disable the plaintiff from engaging in those business pursuits for which, in the absence of such injuries he would have been qualified; and also the physical and mental suffering to which he has been subjected by reason of said injuries, and the jury are to determine what in their opinion will be a fair and just compensation for the injuries suffered, after deducting therefrom the amount paid to the plaintiff by way of relief, allow the remainder of the sum so determined as damages to the plaintiff. (*Granted.*)

*Plaintiff's 3rd Prayer.*—The jury are instructed that if they find a verdict for the plaintiff, and in so finding believe from the evidence that the injury was caused in part by the negligence of the plaintiff, and in part by the negligence of the defendant, the negligence of both contributing to cause the injury, then in estimating the damages they must subtract from the total damages they may find the plaintiff suffered, calculated according to the plaintiff's second prayer, such sum as they may believe from the evidence was proportionate to the amount of negligence attributable to the plaintiff in the causing of the injury, that is to say, for illustration: If the jury find that plaintiff and defendant's negligence were equally efficient causes in producing the injury, then the jury can allow the plaintiff only one-half of the damages they may find he actually suffered by reason of the injury calculated according to the plaintiff's second prayer, or if they find that the plaintiff's negligence was one-fourth

and the defendant's three-fourths of the total negligence, pro-
ducing the injury, then the jury can allow the plaintiff the
amount of damages they may find he suffered, calculated in
accordance with the plaintiff's second prayer, less one-fourth
attributable to him; or if they find that the plaintiff's negli-
gence was three-fourths and the defendant's one-fourth, of
the total negligence producing the injury, then the jury can
allow the plaintiff the amount of damages they may find he
suffered, calculated in accordance with the plaintiff's second
prayer, less the three-fourths attributable to him, and so on
for any other proportionate negligence the jury may find, the
above figures being used only for illustration, and from any
amount the jury may find due the plaintiff under the pray-
ers must be deducted any amount the jury may find was paid
the plaintiff by way of relief.   (*Granted.*)

*Defendant's 5th Prayer.*—The jury are instructed that
even if they shall find that the plaintiff was injured in the
course of his employment, yet their verdict must be for the
defendant if they shall believe that such injury was caused
solely by the negligence of the plaintiff and not by any neg-
ligence on the part of the defendant.   (*Granted.*)

*Defendant's 6th Prayer.*—The jury is instructed that the
burden of proof is upon the plaintiff to establish by a pre-
ponderance of evidence that he was injured in whole or in
part by the negligence of the defendant, and that in this case
the plaintiff must show by a preponderance of evidence that
the failure of the defendant to provide a nose guard for the
use of the plaintiff was negligence on the part of the defend-
ant, and further that the plaintiff was injured by reason of
the failure of the defendant to provide a nose guard.
(*Granted.*)

*Defendant's 8th Prayer.*—The defendant prays the Court
to instruct the jury that the burden is on the plaintiff to es-
tablish by a preponderance of the evidence that he was in-
jured while engaged in interstate commerce in the employ-
ment of the defendant, and also to establish by a preponder-

ance of the evidence that such injury was caused by the negligence of the defendant. (*Granted in connection with plaintiff's first prayer.*)

*Defendant's 10th Prayer.*—The jury is instructed that if they find from the evidence that the danger and risk of injury to the health of the operator of a paint gun or spray without the use of a respirator was so open and obvious that an ordinary prudent person would have observed and appreciated such danger and risk, then the plaintiff assumed such danger and risk to his health from such use of said paint gun or spray, and their verdict must be for the defendant. (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*George A. Pearre* and *A. Taylor Smith,* for the appellant.

*F. Brooke Whiting* and *Albert A. Doub* (with whom was *George L. Eppler* on the brief), for the appellee.

BURKE, J., delivered the opinion of the Court.

The appellee on this record recovered a judgment in the Circuit Court for Allegany County against the Baltimore & Ohio Railroad Company, a corporation engaged in interstate and intrastate commerce, for personal injuries alleged to have been sustained by him as the result of the negligence of the defendant. The appeal before us was taken by the Railroad Company from that judgment. The suit was brought under the provisions of the Federal Employers' Liability Act, approved April 22nd, 1908. The first section of that act provides:

"That every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District

of Columbia or any of the States or Territories and
any foreign nation or nations, shall be liable in dam-
ages to any person suffering injury while he is em-
ployed by such carrier in such commerce, or, in case
of the death of such employee, to his or her personal
representative for the benefit of the surviving widow
or husband and children of such employee; and if
none, then of such employee's parents, and if none,
then to the next of kin dependent upon such employee
for such injury or death resulting in whole or in part
from the negligence of any of the officers, agents or
employees of such carrier, or by reason of any defect
or insufficiency due to its negligence, in its cars, en-
gines, appliances, machinery, track, roadbed, works,
boats, wharves, or other equipment."

The plaintiff was in the employ of the defendant company
at various times from the year 1899, and in the fall of 1912
was employed in its round house at Cumberland as a painter.
At that time the defendant furnished him for use in his work
a spraying appliance called by the witnesses a "paint gun."
This paint gun consisted of a tin can which held about a
gallon of paint and by means of certain appliances attached
to the can the paint was sprayed upon the cars and engines.
This was applied by means of air pressure, and in the opera-
tion of the machine it scattered paint around and upon the
operator, and enveloped him in a mist or fog created by this
spray, which he was obliged to breathe while using the in-
strument. One of the paint guns was exhibited to the jury
during the trial and its construction and operation fully ex-
plained to them. The declaration alleged:

"That at the time of the injuries complained of,
and for a period of about eleven months prior thereto,
the plaintiff under the direction of the defendant rail-
road company, its officers, agents, servants and em-
ployees, has been operating and using a certain paint-
ing machine commonly called a 'gun,' said painting
machine being operated by air pressure of one hun-

dred pounds, which said painting machine was used
for the purpose of painting by means of a spray the
engines and cars of the defendant company, used in
the hauling of commodities and commerce between the
States of the United States as aforesaid, and for that
said painting machine by reason of the strong air
pressure by which it was operated, threw off, scat-
tered and disseminated into the air, which the operator
thereof was obliged to breath, the material used in
the said painting machine, which material was highly
poisonous, deleterious and harmful to anyone breath-
ing the same, which fact was to the plaintiff un-
known; and for that the said defendant railroad com-
pany allowed, authorized and directed the plaintiff to
use and operate the said painting machine, without
any appliance or means of protecting him from the
poisonous, deleterious and harmful spray thrown out
and disseminated into the air as aforesaid, which poi-
sonous, deleterious and harmful painting material
thrown out and disseminated into the air by the spray
(the fact that said spray was poisonous, deleterious
and harmful being unknown to the plaintiff, although
the fact that said spray was poisonous, deleterious
and harmful was known to the defendant railroad
company, or should have been known to it) the plain-
tiff breathed and inhaled and took into his system for
a long period of time, to wit, for a period of about
eleven months, to wit, from October, 1912, to Sep-
tember, 1913, so that the plaintiff, on or about the
6th day of September, 1913, became sick, poisoned
and incapacitated for any kind of work by reason of
inhaling and breathing into his system the said poison-
ous material thrown out from said painting machine
as aforesaid, by reason of which sickness, poisoning
and incapacitation for work the plaintiff has been
caused great physical pain and mental suffering, and
by which he has been permanently injured and totally
incapacitated for life.

686        B. & O. R. R. CO. vs. BRANSON.

Opinion of the Court.                    [128

"The plaintiff further avers that the said injuries resulted in whole or in part from the negligence of the officers, agents, servants and employees of the aforesaid defendant railroad company, thereby violating certain provisions of the law and statutes of the United States for such cases as made and provided."

The defendant demurred to the declaration, and this demurrer, which was overruled by the trial Court, raised the most important question in the case, and as to which we have no precedent to guide us. It is this: Does the Federal Employers' Liability Act embrace such an injury as that sued for in this case? This involves a question of construction of the act. It is contended for the defendant, that the words "suffering injury," occurring in the act, must be given a restricted meaning and confined to injuries which are attended with force or violence. This contention, if sound, would limit the scope and effect of the Act, and withdraw from its operation many recognized causes of action which injured persons may have against railroads engaged in interstate commerce. It is argued that to hold the defendant liable for such an act would multiply litigation and subject interstate carriers by rail to liability never contemplated by Congress. But we are not much impressed by the argument as to apprehended hardships and multiplied litigation which it is contended would result if an action of this character can be maintained. The declaration clearly states a cause of action under the principles of the common law. *State, use of Hamlin,* v. *Malster,* 57 Md. 287; *Dettering* v. *Levy,* 114 Md. 273; *Yates* v. *McCullough Iron Co.,* 69 Md. 370; *Security Cement & Lime Co.* v. *Bowers,* 124 Md. 11.

And, if it should be held that such a suit can not be sustained under the Act, the effect would be merely to remit the plaintiff to his common law action. But this would subject him to the defenses of contributory negligence and the assumption of the negligence of fellow servants. These harsh defenses have never been very potential in the prevention of suits for personal injuries.

The appalling toll of human life—the great army of the lame, the halt, and the blind,—the privations and sufferings of widows and dependent children are the by-products of our mighty and efficient industrial and transportation system, and thoughtful and humane men have long since recognized that the old law of employers' liability was not only unsuited to our changed condition, but in the method of its operation resulted in many cases in great injustice to the injured workman, and great harm both to the State and to the parties immediately concerned. It was to remedy, in a large measure, this evil condition in the field of interstate transportation by railroads that this Act was passed. The Act is a remedial one, and, like all remedial legislation, should have a liberal construction to advance the remedy proposed and to correct the evils against which it was directed. It was designed to enlarge—not to restrict—the rights of the injured workman. Its provisions have a strong tendency to secure greater precautions on the part of the employer for the safety of the workmen. It tends to the prevention of unnecessary accidents, and thus lessen litigation. It eliminates much of the uncertainty attending recovery under the common law rules. In respect to injuries to employees while engaged in interstate commerce the act takes from the employer those defenses which can no longer in reason, justice and humanity be maintained. It abolished the fellow servant rule, and made the employer liable for the negligence of its agents to the employee as well as to strangers. It abolished contributory negligence as a defense, and required the jury in cases where both parties were negligent to adjust the damages. In *Michigan C. R. Co.* v. *Vreeland,* 227 U. S. 59, the Court said, that the act "was intended to cover the subject of the liability of railroad companies to their injured workmen while engaged in interstate commerce." The language of the Act is broad enough to include the injury sued for. That is conceded, and the considerations to which we have referred show that it is within the reason and spirit of the Act, and

688        B. & O. R. R. CO. vs. BRANSON.

Opinion of the Court.                    [128

that the apprehension of increased litigation and hardship·
would not seem to be well founded.

Mr. Richey, in his work entitled *"Federal Employers"*
*Liability Act,"* at page 36, states that: "It was doubtless the·
purpose of Congress to comprehend within its provisions the·
whole subject of the relations of common carriers by rail and
their employees engaged in interstate commerce, and it is
held that it must be construed as including within the terms·
"every common carrier by railroad," and "person employed
in such commerce," every carrier and every person whom·
Congress could constitutionally include. Hence, if the condi-·
tions above stated concur, namely, that the injury was sus-·
tained while the carrier was engaging in interstate commerce,.
and to an employee of such carrier while he was also engaged
therein, the fact that the carrier and the employee were also·
engaged at the same time in intrastate commerce, using per-
haps the same means and agencies for both, is immaterial.
And since the same man may have duties including both·
interstate and intrastate commerce, it follows that the act·
will not necessarily apply to the same person in all the de-
tails of his employment, but that he will be subject to the act
·while engaged in the one and not in the other. Whether in
such case a cause of action arises under the act depends upon·
the circumstances existing at the time of the injury. If at·
the time of the injury, the employee was performing some·
service for the company in furtherance of its interstate com-
merce the rules of law declared in the Act of 1908, and its·
amendment, will apply. Upon the other hand, if the em-
ployee, when injured, is engaged wholly in the performance·
of a service in furtherance of the intrastate business of the·
railroad company, then the act of Congress does not apply,
because to give it application in such case would be extending·
the power of the Federal Government over matters exclu-
sively within the state jurisdiction and control." And the·
author cites many cases in support of the test. JUDGE·
STOCKBRIDGE, in *B. & O. R. R. Co.* v. *Whitacre,* 124 Md.
411, speaking of the applicability of the Act to the facts of

that case, said: "It is difficult to reconcile the various deci-
sions, even to reconcile those of the same Court. A few
propositions, however, are clear. These are, that the Act
was intended to apply only in certain cases, thus recognizing
that there was a class of cases which might arise between a
common carrier by railroad and its employees, in which the
Act has no applicability. This was distinctly recognized in
the case of the *Illinois Central R. R. Co.* v. *Behrens,* 233 U.
S. 473, in an opinion by JUSTICE VAN DE VANTER, and is
further emphasized by section 1 of the Act: 'This clause has
two branches; the one covering the negligence of the officers,
agents or employees of the carrier * * *, and the other relat-
ing to the defects and insufficiencies in the cars, engines, ap-
pliances, etc.' But plainly with respect to the latter, as well
as the former ground of liability, it was the intention of Con-
gress to base the action on negligence only, and to exclude
responsibility of the carrier to its employees for defects and
insufficiencies not attributable to negligence * * *. To hold
that under the statute the railroad company's liability for the
injury or death of an employee resulting from any defects or
insufficiencies of its cars, engines, appliances, etc., however
caused, is to take from the Act the words 'due to its negli-
gence.' The plain effect of these words is to condition the
liability upon negligence.' And in any given case the meas-
ure of the responsibility of the carrier is that of ordinary
care. *Seaboard Air Line* v. *Horton,* 233 U. S. 501."

The declaration states a case in which an employee of an
interstate common carrier by rail suffered an injury as the
result of the negligence of his employer, and we see no reason
upon grounds of public policy or otherwise, why the suit
should not be maintained, if the plaintiff was at the time
engaged in interstate commerce work.

Was he so engaged at the time he suffered the injury?
The declaration alleged that the plaintiff was engaged in the
painting of cars and engines of the defendant company used
by it in the transporting of commodities and commerce
through and between the States, and that at the time of the

690     B. & O. R. R. CO. vs. BRANSON.

Opinion of the Court.                    [128

injuries complained of and for a period of eleven months prior thereto he had been using the paint gun in painting the engines and cars of the defendant used in interstate transportation, and that while so engaged he suffered the injuries complained of as a result of the negligent omission of duty stated in the declaration. Engines and cars are necessary instrumentalities in the business of interstate commerce, and it is the duty of the carrier to keep them in safe condition and proper repair. Without paint the engines would corrode and the woodwork of the cars decay. The work of painting the engines and cars would seem to have a reasonable and substantial relation to interstate commerce. It was said in *Pederson* v. *Delaware L. & W. R. Co.,* 229 U. S. 146, that: "Tracks and bridges are as indispensable to interstate commerce by railroad as are engines and cars; and sound economic reason unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition, and efficiency of the commerce depend in a large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defects or insufficiency * * * in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment' used in interstate commerce." For the reasons stated we are of opinion that the demurrer to the declaration was properly overruled.

The case went to trial upon issue joined upon two pleas filed by the defendant: *First,* the general issue plea, and *secondly,* a plea that the alleged cause of action and the injuries complained of did not accrue within two years before the suit. During the trial the defendant reserved sixteen exceptions—fifteen relate to questions of evidence, and the other to the action of the Court on the prayers submitted at the conclusion of all the testimony.

Before examining the prayers it must be noted that by the sixth section of the Act it is provided that no action shall be maintained under it "unless commenced within two years

from the day the cause of action accrued," and that the Court expressly told the jury that in order for the plaintiff to recover "he must prove by a preponderance of the evidence that he suffered the injury of which he complains within two years before the 25th of June, 1915, the day when this suit was brought." It must further be borne in mind that the refusal of the Court to strike out evidence does not constitute reversible error where the same evidence has been previously or subsequently admitted without objection. *B. & O. R. R. Co.* v. *Chambers,* 81 Md. 371; *Leffler* v. *Allard,* 18 Md. 545.

The first and second exceptions were taken to the refusal of the Court to strike out the testimony of the plaintiff that he began using the spray in the fall of 1912, and that he used it from the time it was first brought to the Cumberland yards until the sixth of September, 1913. This ruling can not be held to be reversible error; *first,* because the witness had previously stated without objection that he began using the machine in the fall of 1912; *secondly,* the same fact was proven by the defendant; and *thirdly,* this evidence is the basis of the defendant's whole contention that the suit is barred by limitations. The third, fourth and fifth exceptions may be considered together. The plaintiff testified that his health was "extra good" until September 6, 1913, when he was taken sick, and the purpose of the testimony embraced in these exceptions was to show his condition of health after that date. It tended to support the allegation of the *narr.* and was properly admitted. The evidence embraced in the sixth exception tended to show that the plaintiff did not know before he was taken sick that there was an appliance to protect a person using the gun. In a case like this where assumption of risk is a defence, and where contributory negligence may be used in reduction of damages, it would appear that such evidence was admissible. In *Security Cement and Lime Co., supra,* JUDGE BOYD said: "The general rules of law applicable to master and servant are now too well settled to require the citation of many authorities, but it may not be amiss to recall some of the rules

we have announced. In *Bernheimer Bros.* v. *Bager,* 108 Md. 551, we said: 'It is a fundamental rule that the master must exercise ordinary and reasonable care to avoid unnecessary injuries to his servant in the course of his employment. While he is permitted to delegate to others certain duties there are some which he can not relieve himself of, or avoid the responsibility for, if there be a failure to discharge them to the injury of the servant. One that is required of him, in this, as well as in other jurisdictions, is providing and maintaining safe machinery and appliances and a reasonably safe place for the work undertaken by the servant. Necessarily there are some exceptions to these as well as to most general rules.' In that case we quoted with approval as we had previously done what was said by the Supreme Court in *B. & O. R. R. Co.* v. *Baugh,* 149 U. S. 368: 'A master employing a servant impliedly engages with him that the places in which he is to work, and tools or machinery with which he is to work, or by which he is to be surrounded, shall be reasonably safe. It is the master who is to provide the place and the tools and machinery, and when he employs one to enter his service he impliedly says to him that there is no other danger in the place, the tools and the machinery, then such as is obvious and necessary.' We gave as illustrations of the exceptions above referred to, when a place is out of repair and dangerous and the employee undertakes to make it safe, and when he accepts an employment or continues in it, with knowledge of the danger, the employee can not ordinarily hold his employer liable." In *Dettering* v. *Levy,* 114 Md. 273, we said: "In *Yates* v. *McCullough Iron Co.,* 69 Md. 370, this Court, after speaking of the risks which the servant assumes, said: 'It may be assumed that this rule applies only to patent or obvious defects, such as persons of ordinary care would be likely to discover, and that the servant is not bound to inspect the appliances to see whether or not there are latent defects that render their use more than ordinarily dangerous, but is only required to ascertain such defects or hazards as are obvious to the senses, 2 *Wood's*

*Master and Servant* (2nd Ed.), sec. 376. Hence in cases
where knowledge of the defects does not necessarily carry
with it knowledge of the resulting danger, it may be proper
for the Court to instruct the jury as requested in the plain-
tiff's second prayer.' That prayer asked the Court to in-
struct the jury that if they found that the machinery in ques-
tion was, owing to some defect in it or in the building in
which it was placed, unsafe and dangerous, by reason of the
negligence of the defendant, 'Then in order to establish that
the plaintiff assumed the risks involved in using it, it is not
sufficient to show that the machinery was defective, and that
such defect was known to the plaintiff, but it must appear
that the danger was known to him as well as the defect which
caused the danger, or that by reasonable care on his part it
would have been known to him.' " The seventh exception
was to permitting the plaintiff to testify that he had six
children. This fact was subsequently proved during the ex-
amination of Doctor Hamman. There was no error in over-
ruling the motion to strike out *all* the evidence of the wit-
ness Stewart. Some portion of his evidence was material
and important, and a motion to strike out the whole evidence
was properly refused. The ninth exception was based upon
the ground that it referred to the use of the spray prior to
June 25, 1913. What we have already said disposes of this
exception. We find no error in the rulings in the eleventh
and twelfth exceptions. They all related to the testimony of
G. W. Pilson. The testimony embraced in these exceptions
had in substance been offered without objection in a previous
part of this witness' testimony. This witness had been fore-
man of the paintshop of the defendant company at Cumber-
land, and in cross-examination had stated that that he
had reported the plaintiff sick, and on re-direct examination
he was asked why he had done so? He answered: "I don't
consider it safe to have the man on the works. He blundered
around like a blind horse and I was afraid he would be run
over." This evidence had an important bearing upon the
plaintiff's physical condition, and we think the Court was

right in admitting it.   We find no reversible error in the fourteenth and fifteenth exceptions.   This brings us to the consideration of the prayers, and before disposing of them it is proper to say that upon the question of the extent of the plaintiff's injury, and upon the question as to whether he could have been injured by the inhalation of the mist and spray thrown out by the paint gun, there is great conflict in the testimony.   But it is unnecessary for us to discuss this evidence, as it was the province of the jury to pass upon its weight and credibility, and we have no power to review its findings upon the facts.

The Court granted three prayers on behalf of the plaintiff and seven on the part of the defendant.   The Reporter will set out these prayers in the report of the case.   They are based upon sound legal principles applicable to a suit under the Act.   They submit clearly to the jury the theories of each party.   They certainly present the case of the defendant as favorable as it could require.   We can not discover any reversible error in the rulings on the rejected prayers.   One of these asked the Court to direct a verdict for the defendant because of the want of legally sufficient evidence, and others because of the want of legally sufficient evidence to prove some fact essential to the plaintiff's case, and others referred to questions which were fully covered by the granted prayers. There was evidence in the case on behalf of the plaintiff legally sufficient to have justified the Court in submitting to the jury the finding of every fact essential to the plaintiff's right to recover.

Our conclusion is from a careful examination of the whole record that the Court committed no reversible error in any of its rulings and that the judgment appealed from must be affirmed.

*Judgment affirmed, with costs.*