# THE PACKARD IRON AND METAL COMPANY, Inc.,

## vs.

# H. P. PEARL & COMPANY, Inc.

*Sale of Goods—Damages for Non-Delivery—Admission of Evidence—Motion to Strike—Review on Appeal.*

In case the vendor, having failed to deliver the goods at the time originally named, subsequently makes from time to time promises of immediate delivery, in which the purchaser acquiesces, the time of the last promise, or of refusal to deliver thereafter, is "the time when they ought to have been delivered," within Code, art. 83, sec. 88, fixing, as the measure of damages for non-delivery of goods, the difference between their market or current price at that time and the contract price.

pp. 503, 504

Error in the admission of evidence over objection is not cause for reversal if the same witness subsequently testifies to the same thing without objection. p. 504

A motion to strike out certain questions and the answers thereto *held* properly refused, as some of such testimony was material and relevant. p. 505

If the defendant, at the close of plaintiff's evidence, offers a prayer asking the court to take the case from the jury and, while excepting to the action of the court in refusing the prayer, proceeds to offer evidence in defense, he thereby waives the exception. p. 505

One is not bound by a usage or custom not shown to have been known to or adopted by him. p. 505

The propriety of the court's action in permitting a question to be asked is not reviewable if no answer appears to have been given to the question. p. 506

The evidence as to the reasons for the failure to deliver the material sold by defendant to plaintiff, *held* to be so conflicting as to present a case for the determination of the jury. p. 506

*Decided November 30th, 1921.*

Appeal from the Superior Court of Baltimore City (SOPER, C. J.).

Action by H. P. Pearl & Company, Inc., against The Packard Iron & Metal Company, Inc., for non-delivery of goods purchased. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, STOCKBRIDGE, and OFFUTT, JJ.

*Charles Jackson* and *Howard Bryant,* for the appellant.

*Allan H. Fisher,* with whom were *Fisher & Fisher* on the brief, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The record in this case contains eight bills of exceptions. Six of them relate to the rulings of the court upon evidence, and two to the refusal of the court to grant the defendant's prayers withdrawing the case from the consideration of the jury.

The appellant, the defendant below, is in the scrap iron business, with its place of business in Baltimore City.

The appellee, the plaintiff below, is a Pennsylvania corporation, conducting a brokerage business in scrap iron and scrap steel, buying from railroads, dealers and industrial plants and selling to mills.

The declaration contains three counts, and sets out three separate and distinct contracts, upon which this suit is brought.

The first count charges that the defendant, on the 29th day of July, 1919, sold to the plaintiff, by an agreement in writing, and the plaintiff purchased from the defendant, one carload No. 1 long yard wrought scrap (30 gross tons) suitable and acceptable to the mills at and for the price of nineteen dollars per gross ton, f. o. b. cars, Baltimore, Maryland, delivery to be made within thirty days of the date of the contract; and the plaintiff says that it made demand upon

the defendant for the delivery of the said wrought scrap, under the terms of the contract, but the defendant did not deliver the same or any part thereof; and the plaintiff says that it has been greatly damaged by the said non-delivery by the defendant; and the plaintiff further says that the difference between the contract price and the market price at the date the goods should have been delivered was eleven dollars per gross ton, and that because of the failure of the said defendant to so deliver any of said wrought scrap the plaintiff was damaged to the extent of three hundred and thirty dollars.

And the second count avers that on the 24th day of December, 1919, the defendant sold to the plaintiff by an agreement in writing, and the plaintiff purchased from the defendant one carload No. 1 machinery cast scrap broken in one-man pieces (30 gross tons) at and for the price of thirty dollars per gross ton delivered Eastern Pennsylvania, shipment to be made within thirty days of the date of said contract; and the said plaintiff says that the said defendant failed to deliver said machinery cast scrap, or any part thereof, although the said plaintiff made demand for the delivery of said machinery cast scrap in accordance with the terms of said contract; and the said plaintiff says that it has been greatly damaged by the said non-delivery by the said defendant; and the plaintiff further says that the difference between the contract price and the market price at the date the goods should have been delivered was nine dollars per gross ton, and that by the said defendant's failure to deliver said machinery cast scrap in accordance with the said contract, the plaintiff suffered damage to the extent of two hundred and seventy dollars.

And the third count alleges that, on the 24th day of December, 1919, the defendant, by an agreement in writing, sold to the plaintiff, and the plaintiff purchased from the defendant, one carload wrought iron and soft steel pipe and tubes, new specification (30 gross tons) at and for the price of

twenty-two dollars per gross ton delivered to Lebanon, Pennsylvania, or equivalent point, delivery to be made within thirty days of the date of said contract; and the plaintiff further says that the defendant failed to deliver said wrought iron and soft steel pipe and tubes, or any part thereof, although the plaintiff made demand upon the defendant for the delivery of same in accordance with the terms of said contract; and the plaintiff further states that it has suffered damages because of the said non-delivery; and the said plaintiff further says that the difference between the contract price and the market price at the date the goods should have been delivered was three dollars and fifty cents per gross ton, and that by the defendant's failure to so deliver the plaintiff suffered damage to the extent of one hundred and five dollars.

The defendant pleaded to the first count of the declaration, that it never promised as alleged, and that it was never indebted as alleged.

And for pleas to the second count, it pleaded, first, that it never promised as alleged; second, that it was never indebted as alleged, and for its third plea, that at the time of the alleged making of the contract set forth in said second count of the said declaration, to wit, on the 24th of December, 1920, the said plaintiff was indebted to the said defendant in the sum of $188.35, said sum being due and owing and being a balance due for merchandise sold and delivered by the defendant to the plaintiff; that prior to and at the time of the alleged sale of the merchandise mentioned in said second count of said declaration, the plaintiff agreed to pay to the said defendant the said sum of $188.35, and it was further agreed that upon receipt of the said sum of $188.35 from the said plaintiff by the defendant, the merchandise aforesaid would then be immediately loaded on cars for shipment to the said plaintiff; that the said plaintiff has not paid the said defendant the said sum of $188.35, nor any part thereof, and said sum of $188.35 is still due and owing by the plaintiff to the defendant; that this defendant further says that

it was always ready and willing to perform its part of the agreement, but that the plaintiff failed to perform its part of the agreement as aforesaid.

And to the third count of the declaration, it filed the same pleas as filed by it to the second count.

The contracts are set out in the record, and there is no dispute that they were made and entered into by the plaintiff and defendant. It is admitted that all three of the contracts provided for the shipment of the wrought scrap iron within thirty days from their date and the defendant failed to ship or deliver any of the material called for by these contracts.

The suit is brought to recover damages for a breach of the contract, for the non-delivery of the material called for and set out in the contracts.

At the trial of the case, a verdict was rendered by a jury in favor of the plaintiff for the sum of $615, and subsequently a *remittitur* of $66.85 was entered in open court on this verdict. From a judgment on the verdict in favor of the plaintiff for $548.15, the sum found by the jury, less the *remittitur*, this appeal has been taken.

The first and second exceptions were to the action of the court in overruling the defendant's objection to the following question, and permitting it to be answered: "What was the market price of No. 1 long yard wrought scrap in Baltimore during the month of February, 1920?"

The witness was qualified to testify as to the market price of scrap iron, and this evidence was admissible as reflecting upon the rule and measure of damages in cases of this character.

By section 88 of article 83 of the Code (Uniform Sales Act), it is provided:

(1) Where the property in the goods has not passed to the buyer and the seller wrongfully neglects or refuses to deliver the goods, the buyer may maintain an action against the seller for damages for non-delivery.

(2) The measure of damages is the loss directly and naturally resulting, in the ordinary course of events, from the seller's breach of contract.

(3) Where there is available market for the goods in question the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver.

In *United Railways & Electric Company* v. *Wehr,* 103 Md. 341, it is said that when a contract provides for the sale of old material in a structure to be taken away by the buyer and the seller afterwards refused to permit the same to be removed, the measure of damages is the difference between the contract price and the market price at the time of the refusal. *Williams* v. *Woods,* 16 Md. 259; 35 *Cyc.* 638.

In *Northwestern Iron and Metal Co.* v. *Hirsch,* 94 Ill. App. 579, the court, in dealing with a similar question, said: "Nor was there any error in the measurement of damages as by the market price in September, 1899. The contract between appellant and appellee was for delivery within thirty days after April 10, 1899. The performance by the appellant was postponed from time to time by promises to deliver. These promises extended over the period from the time when delivery was due by the terms of the contract until the time of the settlement by the appellee of the claim of damages against him and the bringing of this suit. At no time between May and September, 1899, was the appellee bound in disregard of these promises of a postponed performance to go upon the market and by a purchase fix the amount of his loss and consequent damage."

In *Summers* v. *Hibbard,* 153 Ill. 102, it is said: "There is no doubt of the correctness of the rule stated by the appellants, that where delivery is required to be made by installments, the measure of damages will be estimated by the

value at the time each delivery should be made. In the case at bar, appellees made threats to buy in at seller's expense, but excuses rendered and promises made by appellants of frequent and large shipments deterred them from doing so. If delivery is postponed by agreement between the parties, the measure of damages is the difference between the contract price and the market price at the time the article is deliverable by the subsequent agreement, and where the time of delivery is postponed indefinitely, the measure of damages is the difference between the contract price and the market value at a reasonable time after demanding performance."

In *McDermid* v. *Redpath,* 39 Mich. 372, JUDGE COOLEY said, in delivering the opinion of the court: "This suit originated in justice's court, where McDermid was declared against for breach of contract to deliver 100 bushels of wheat, on which he had paid $25. The purchase was made September 18, 1876, and the wheat was to be delivered in two or three weeks. Delivery was not made as agreed and the evidence showed that McDermid from time to time afterwards was called upon to make it and kept promising to do so. About March 1, 1877, he promised to bring the wheat 'right down,' but did not do so, and suit was brought. Meantime the value of wheat had been steadily advancing. The main question made on the record is whether the justice was correct in estimating the damages. McDermid insisted that the damages should be estimated by the price of wheat at the time when, by the contract, he was to make delivery; that is to say, at the end of two or three weeks from the purchase; but the justice gave judgment estimating the damages by the price in the following March. In this he was right. The time of delivery had been extended by the defendant himself and the plaintiffs were entitled to the wheat or its value, at the time he last promised to deliver it."

But apart from this, the same witness subsequently testified to the same thing without objection, and the appellant was not injured by the ruling set out in this exception.

*Fleischman* v. *Clarke,* 137 Md. 171; *District Nat. Bank* v. *Mordecai,* 133 Md. 419; *Duvall* v. *Ridout,* 124 Md. 193; *Sentman* v. *Gamble,* 69 Md. 293.

There was no error in the ruling set out in the third exception. The motion to strike out all the questions propounded to the witness Mather, and all the answers thereto, was entirely too broad, as some of the testimony was material and relevant, and the court was correct in its rulings thereon. *United Rys. & Elec. Co.* v. *Wehr,* 103 Md. 337; *Jessup* v. *State,* 117 Md. 123; *Baltimore* v. *Park Corp.,* 126 Md. 366; *Balto. & O. R. Co.* v. *Branson,* 128 Md. 693.

It appears that, at the conclusion of the plaintiff's case, the defendant offered a prayer to withdraw the case from the jury, upon the ground that no evidence legally sufficient had been offered in the case to entitle the plaintiff to recover. This prayer was refused and the defendant reserved the fourth exception set out in the record and proceeded with its case.

It is well settled that when the defendant at the close of the plaintiff's evidence offers a prayer asking the court to take the case from the jury and although excepting to the action of the court in refusing it, yet proceeds to offer evidence in defense, he thereby waives the exception. *Barabasz* v. *Kabat,* 91 Md. 55; *Cowan* v. *Watson,* 91 Md. 344; *Penn. R. Co.* v. *Cecil,* 111 Md. 288; *Bernstein* v. *Merkel,* 126 Md. 454.

The fifth exception presents the action of the court in ruling to strike out the following answer and question: "Q. Why didn't you speak to him about that? A. Well, the time of delivery was thirty days and it was five or six months after that; as a rule most brokers and dealers have thirty days; if material is not delivered, it is cancelled."

We see no error in the ruling in the fifth exception. The law is well settled that one is not bound by a usage or custom not shown to have been known to or adopted by him. *Mer-*

*cantile Trust & Dep. Co.* v. *Rode,* 137 Md. 370; *Jarrett* v. *Staum & Sons Co.,* 138 Md. 217.

No answer appears to have been given to the question to which the sixth exception seems to refer, and the propriety of the court's action in permitting it to be asked is, therefore, not reviewable. *Moneyweight Co.* v. *McCormick,* 109 Md. 174; *Mertens* v. *Mueller,* 122 Md. 318; *Lawson* v. *Price,* 45 Md. 123.

There was no error in the ruling of the court set out in the seventh exception. The usual custom in the trade regarding the payment of freight if articles are rejected, sought to be elicited by the question, was immaterial and irrevelant, and for the reasons stated in the discussion of the fifth exception the evidence was clearly inadmissible and the ruling was correct.

The eighth exception contains the ruling of the court in refusing to grant the defendant's prayer, at the close of the case, asking the court to instruct the jury that no evidence legally sufficient had been offered in the case to entitle the plaintiff to recover and the verdict must be for the defendant.

There was clearly no error in the ruling of the court refusing to withdraw this case from the consideration of the jury, under the evidence disclosed by the record. It was admitted by the defendant that none of the material called for and set out in these contracts were delivered, according to the terms of the contracts. The evidence, as to the reason for this failure to deliver the material according to the terms of the contracts, was somewhat conflicting and, this being so, it was a case for the jury to determine upon the facts and evidence submitted at the trial.

Finding no reversible error in the rulings of the court, and the case having been fairly tried in the court below, the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*