ALBERT E. MARKLEY ET AL. *v.* STATE OF MARY-
LAND

[Nos. 42-45, October Term, 1937.]

310

*Decided January 11th, 1938:*

The causes were argued before BOND, C. J., URNER, OFFUTT, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Jerome A. Loughran*, for Albert E. Markley, appellant.

*Jerome A. Loughran* and *W. Giles Parker*, with whom were *Paul M. Higinbotham* on the brief, for John E. Wheeler, appellant.

*George B. Woelfel*, with whom were *E. Milton Altfeld* and *Sigmund Levin*, for John E. Tayler, appellant.

*Hiram C. Griffin*, with whom were *Jerome A. Loughran* and *Stanley R. Bossard* on the brief, for John Herbert, appellant.

*William L. Henderson, Assistant Attorney General*, and *C. Ferdinand Sybert, State's Attorney for Howard County*, with whom was *Herbert R. O'Conor, Attorney General*, on the brief, for the State.

BOND, C. J., delivered the opinion of the Court.

The appellants, three members of the state police force formerly stationed on the Washington Boulevard in Howard County, and the keeper of a garage and shop there, appeal from convictions and sentences on a joint indictment charging them with conspiracy to defraud operators and owners of motor vehicles using the highway, late in the year 1935 and in 1936. The case was tried by a jury. It was testified that the policemen would stop drivers and find deficiencies in the vehicles or their equipment, and refer them to the garage kept by Herbert for correction, and there they would be charged excessive prices, and the proceeds would be shared by Herbert and the policemen. There was also testimony of exactions of pay for unnecessary towing.

Herbert Strain, of Indianapolis, Indiana, and Leroy Hopkins, testified that while driving two trucks for the same employer near the police barracks on the road, Markley and Wheeler arrested them because of noise from a muffler on Strain's truck, took them before a magistrate, who fined them, and pulled their trucks to Herbert's

garage and directed that new mufflers be put on, before the trucks were moved. Thinking the prices charged to be excessive, the drivers procured the mufflers at smaller prices elsewhere, and for the moving of Strain's truck for the purpose a fine of $50.75 was imposed by the magistrate.

Walter H. Pikey, of Howard County, said he was stopped three times, twice by Wheeler and once by Markley, with directions to have his tail-light fixed at Herbert's garage. In one instance the bulb had fallen out of the socket and a charge was made for putting it back. M. T. Covington, of Howerton, Virginia, testified that he was stopped while driving a truck and trailer, and, a small hole having been found in his muffler, was compelled to have this repaired at Herbert's garage, at a price of $7.50. His license plate, too, was tightened, and a charge made for it. Joe V. Barrett, of Charlotte, North Carolina, testified that while driving a truck he was stopped by Wheeler and held at Herbert's garage to obtain insurance in Maryland, for adjustment of his tail-light so that it would shine better on the license plate, to buy flares and a windshield mirror. There was testimony that he was given an address of an insurance agent in Maryland, but that as he did not have money enough to pay the cost of the insurance here he arranged insurance in North Carolina by telephone. He was released upon buying and paying for the other items.

Evidence was produced tending to show that the prices so collected were higher than was usual, that there was a higher set of prices for vehicles brought or sent to the garage by the policemen, and that for each item of sale or repairs the particular officer who brought or sent the vehicles in was credited, and would receive a share of the proceeds. The sum total of such exactions was stated to have been large; it being declared that when business was good 200 "muffler charges" a month were brought in to the garage. The exactions for towing, it was stated, were largely for towing out of the state, as an indulgence to drivers charged with violations of Maryland laws which might otherwise involve heavier costs.

On behalf of the traversers the conspiracy was denied, and the testimony tending to prove any of the ground of indictment was contradicted.

A detective sergeant, Linhart, testified that Officer Tayler, in July of 1936, disclosed to him, Linhart, that the practice described was being followed, and that Herbert subsequently divulged some of the same facts. And on September 9th, 1936, a meeting with these men, with others, was held at the house of Major Enoch B. Garey, the superintendent of state police, and statements of facts, with details of the alleged conspiracy, in writing, were there signed by Tayler and Herbert in the presence of witnesses. Admission in evidence of any of the incriminating statements, oral or written, was resisted.

The principal questions in the case, those mainly argued, are few, although there are eighty-six exceptions noted in the record. Naturally, among so many, some, measured by the practical effect of the rulings on the case, are of small importance.

Exceptions appear to have been noted to the admission of the confessions, or statements in the nature of confessions, although the exceptions are not found in the record set out and numbered as if intended to be pressed on appeal. There was no motion to have the confessions restricted to proof against the confessing defendants only, and none to have objectionable parts omitted; the objections were that the whole of the statements should be excluded from the case entirely. This court has considered all the arguments made, however. All defendants object on the ground that the confessions were involuntarily made; Tayler on the separate ground that they were uncorroborated by any evidence tending to prove him a participant in the conspiracy; Herbert on the separate ground of a promise that his confession would be kept secret, and that he would not be prosecuted; and Markley and Wheeler on the additional grounds that the statements were made, not in their presence or by their authority, and not by co-conspirators in furtherance of the common design; and that they contained hearsay

and opinion evidence. The common design, if there was any, it is contended, had, according to all the evidence, been ended when the statements were made, and they could not therefore have been in furtherance of it for that reason, and for the reason that informing of the design would not be furthering it. *Lawrence v. State,* 103 Md. 17, 22, 63 A. 96; 2 *Wigmore, Evidence,* (2nd Ed.) sec. 1079; 3 *Wharton, Criminal Evidence,* 11th Ed. sec. 1215.

Linhart's testimony was that, in pursuance of an engagement to take dinner at Tayler's house, he met Tayler there on August 5th, and Tayler voluntarily disclosed to him the fact of the practice of the extortion on the boulevard, and that of Herbert's part in it. As a consequence, he says, of his, Linhart's, wish to hear Herbert's story of it, Tayler brought Herbert to the house a week later, and then Herbert told of details of the practice. According to the testimony, both men spoke voluntarily, as if taking steps to rid themselves of an imposition; Tayler adding that he had a grievance against Markley. During some weeks afterwards, the testimony continued, Tayler stopped at Linhart's office two or three times to show arrest slips used in the extortion, and told further facts concerning it. Then the meeting at Major Garey's house, and the signing of the written confessions, followed on September 9th. There were present, besides Major Garey, Linhart, Tayler, and Herbert, Detective Sergeant Conroy, and Mr. James M. Hepbron, director of the Criminal Justice Commission of Baltimore. A preliminary hearing by the court, in the absence of the jury, was held on the question of admission of the extrajudicial statements, and all persons except the traversers testified to an absence of any inducement, persuasion, or threat to procure them. Tayler, on the other hand, testified that Linhart promised to get him a job with the Celanese Corporation if he made the statements on his part; other witnesses, however, including one called for the traversers, testified that the conversation about getting Tayler the job took place in October, shortly after Tayler

had been suspended from the force. Both Tayler and Herbert testified that they had some drinks at Major Garey's house, before signing the papers, and there was testimony, on the contrary, that the men were not in any way affected by liquor, and that they had no drinks before signing.

The confession of Herbert was prefaced with a statement that it was made upon a condition that his name be kept out of any published statements on the case, and that what was said was to be regarded as confidential, for the reason that Herbert felt "that these men and their associates could ruin me in my business if it became known that I had told on them." Linhart testified that he composed the prefatory statement that the confession be held confidential, and that he intended to keep it so, but both he and Herbert testified further that Herbert subsequently acquiesced in a decision that it could not be kept secret, and that was the testimony of others present at the meeting at Major Garey's house. Herbert testified that his consent was procured, all after he had signed, by Mr. Hepbron's explaining that he could charge fair prices if the "racket" were broken up, and that the State was big enough to protect him from reprisals. Mr. Hepbron had come to the meeting only after the written confessions had been signed. In addition, Herbert said, he was led to believe he was not to be prosecuted. Both of the confessions implicated Markley and Wheeler. Tayler's complicity was mentioned only in his own statement. The trial court received the confessions in evidence, subject to exceptions if, after the testimony of the conspiracy should be received, it should fail to implicate any of the defendants. *Lawrence v. State,* 103 Md. 17, 20, 63 A. 96. After the introduction of the whole evidence for the State in chief, motions were filed on behalf of all the traversers together and on behalf of each one, that all that evidence be excluded, not alone the evidence relating to the confessions, but all the evidence; and that it be excluded from the case entirely, not merely restricted to proof against separate defendants.

It was for the court to decide whether the confessions were made with or without improper inducement, and in the decision on the conflicting evidence this court cannot find any error. *Nicholson v. State,* 38 Md. 140, 155; *Rasin v. State,* 153 Md. 431, 441, 138 A. 338. On each question of inducement the predominance of the evidence tended to prove that both the oral statements and the subsequent written confessions were voluntary and free from valid objection. See *McCleary v. State,* 122 Md. 394, 404, 89 A. 1100.

Tayler, mentioned as a participant only in his own statements, invokes the rule that neither admissions nor confessions of a defendant are sufficient in themselves to support conviction of a crime. 2 *Wharton, Criminal Evidence,* (11th Ed.) secs. 640, 641, 648. This being true, the argument is, Tayler is not implicated in the alleged conspiracy, and the confession of Herbert, as well as his own, should have been excluded as against him. But the rule is, more exactly, that a defendant's own confession of commission of a crime cannot convict him of it unless there is independent evidence tending to prove the *corpus delicti,* or, as the majority of courts view it, to prove that the crime has actually been committed by some one. *Weller v. State,* 150 Md. 278, 284, 132 A. 624; 4 *Wigmore, Evidence* (2nd Ed.) secs. 2070, 2071 and 2073. Here evidence that the crime had been committed by some one was present in the testimony of alleged victims and others, and, in addition, it was testified that Tayler was one of the officers at work on that section of the highway at the time of commission of some of the acts mentioned. That testimony would have supplied the corroboration necessary to support admission of the confessions as against Tayler, according to any definition of the *corpus delicti.* 4 *Wigmore, supra.* It cannot be held, therefore, that there was no evidence to implicate him in the conspiracy.

An assurance of secrecy is regularly held insufficient to render a confession inadmissible on the ground that it is involuntary within the meaning of the rule. 2 *Whar-*

*ton, Criminal Evidence* (11th Ed.) 1036; *Joy, Admissibility of Confessions,* 50. And if Herbert assumed that he was not to be prosecuted for his part, there is no definite evidence in the record that this expectation was encouraged by others, or that such an expectation may have induced him to sign. The testimony does suggest that it was the expectation of Herbert and the officials questioning him that he would not be prosecuted, but it is not so definite as to provide proof of that expectation. A mere hope or expectation not held out by others would not render a confession involuntary. *Hardy v. United States,* 3 App. D. C. 35. And see review of decisions in 18 *L. R. A., N. S.,* 825.

As to the additional objections of Markley and Wheeler, it is, of course, a rule that admissions or confessions of co-conspirators, out of the presence of the objectors, and in no way authorized by them, would not be competent evidence against them, for they would not be statements or acts in furtherance of the conspiracy. "One who makes no confession must be found guilty, if at all, only upon proof independent of a confession by a co-defendant." 3 *Wharton, Criminal Evidence* (11th Ed.) 1215; *People v. Fisher,* 249 N. Y. 419, 164 N. E. 336; *State v. Huckins,* 212 Iowa 283, 234 N. W. 554. But when on trial the confessions are admissible against the confessing codefendants, those not confessing are entitled only to have the jury directed to exclude them as proof against themselves. It may be that the practical value of such a restriction is small, but it is the only remedy practicable on a joint trial. And here Markley and Wheeler sought, as stated, to have not only the confessions, but other evidence along with them, excluded from the case entirely. The trial court's refusal to do so cannot be held erroneous. *United Railways & Electric Co. v. Wehr & Co.,* 103 Md. 323, 337, 63 A. 475; *Packard Iron & Metal Co. v. H. P. Pearl & Co.,* 139 Md. 498, 505, 115 A. 761.

Objection is made on behalf of Tayler that the confessions were, first, written by Sergeant Linhart from notes

of what had been told him in the previous conversations, but that fact made them none the less confessions of the men who signed them, if they knew what they were signing, and here there is testimony that they read them and had corrections and alterations made to suit them, before signing.

The objection that the confessions contain hearsay and opinion evidence is made by the two officers who were not present when they were signed. Tayler, in his confession, stated: "I have never seen Officer Thompson or Corporal Wheeler actually collect any money or admit receiving, but I am sure they are both in on it." Herbert, referring to a garage set up next door by one of his mechanics, said: "I am convinced that Sgt. Markley and Corporal Wheeler have financed this man and set him up in business, that they are really silent partners and actually sharing in the proceeds of this garage." And, again, he said: "I have nothing against any of these officers, but I happen to know that Wheeler, Thompson and are all in this gang with Markley, because Markley has come to me and told me it was O. K. to pay them." But whatever their deficiencies, the inclusion of these statements could not have rendered the confessions inadmissible against the co-defendants making them, and could not have justified excluding from the case the whole confessions, and all other state testimony along with them, even as proof against particular defendants.

Exceptions of another group, chiefly pressed by all the appellants, were to the admission in evidence of prices paid by the drivers Strain and Hopkins for the mufflers bought by them in shops other than Herbert's. It is objected that this evidence was useless for the purposes of comparison with Herbert's prices, because it was not shown that the mufflers bought were the same, and that therefore they were not relevant to any issue. The purpose of the evidence was not that of such exact comparison, but to show that the trucks were held at Herbert's garage for purchase of mufflers at unnecessarily high prices. There was relevancy in the evidence admitted.

Markley, Wheeler, and Tayler press exceptions to the rejection of evidence of their reputation among their fellow officers and people of the community where they were stationed, along the boulevard. While on duty they spent nights as well as days at the station there, away from their homes, and it is urged that the officers and people of the nearby community constituted those who would best know the character of the defendants. A witness who was asked for the reputation of Markley among people of that neighborhood knew the opinions of only two families on the subject, and was not equipped to state what the general reputation was. But the rejection of the evidence by the trial court was in conformity with former decisions of this court, that the reputation at a place of business or among business associates is not that which should be received as evidence of character, good or bad. *Eschbach v. Hurtt*, 47 Md. 61, 66; *Sloan v. Edwards*, 61 Md. 89, 103; *Bonaparte v. Thayer*, 95 Md. 548, 560, 52 A. 496; *Wentz v. State*, 159 Md. 161, 166, 150 A. 278. A rejection of testimony as to Linhart's reputation for truth and veracity was also proper, because of the limits imposed by the questions on the areas, the time, and the community from which the reputation was to be deduced. There seems to the court to be no need of discussing these objections in greater detail in the opinion. Questions regarding the cause of an alleged resignation of Linhart, seven years before, from a position in the office of the Automobile Commissioner, seeking, as they did, to elicit proof of a charge made but not adjudicated, were properly excluded. *Burgess v. State*, 161 Md. 162, 169, 155 A. 153.

Other exceptions pressed have not appeared to justify lengthening the opinion with separate discussion, because the rulings excepted to would seem to have been without substantial effect on the result of the trial, and were free from reversible error.

No error having been found to support the appeal for reversal and retrial, then the judgments must be affirmed.

*Judgments affirmed, with costs.*