ROY NATHAN PETERS AND WILLIAM DANIEL DEMBY *v.* STATE OF MARYLAND

[No. 160, October Term, 1945.]

*Decided July 23, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*S. Winfield Cain* and *Thomas F. Cadwalader* for the appellants.

*J. Edgar Harvey, Assistant Attorney General,* and *William H. Maynard, Deputy State's Attorney,* with whom were *William Curran, Attorney General, J. Bernard Wells, State's Attorney for Baltimore City,* and *D. Paul McNabb, State's Attorney for Harford County,* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

The appellants, both Negroes, were jointly indicted with two other Negroes, for rape alleged to have been committed on a private of the Women's Army Corps on the night of January 8, 1946. The crime was charged to have occurred in Harford County, near the United States Government Military Post, known as the Edgewood Arsenal, at which the prosecuting witness, a white woman, was stationed. The case was removed from the Circuit Court for Harford County to the Criminal Court of Baltimore City where it was tried before three judges of the Supreme Bench, commencing on February 12th. The trial was joint. The appellants and another defendant were found guilty of rape. The fourth defendant was found guilty of assault with intent to rape. Appellants were sentenced to death, and the other two traversers were sentenced to life imprisonment. No appeal was taken by the latter. This appeal was taken under the provisions of Chapter 1068 of the Acts of 1945.

The questions involved are (1) whether the statements or confessions made by the appellants were admissible, and (2) whether this Court has jurisdiction to review

the entire case in order to determine whether the evidence was insufficient to convict. We will consider them in order.

It is not necessary to relate all the facts, concerning the crime charged, in order to pass upon the questions involved. It is sufficient to say that some time between 9 and 10 o'clock at night, the prosecuting witness was standing with an army sergeant on a paved road in Harford County. The appellants and the two other traversers were in an automobile. They stopped as they were passing the prosecuting witness and her companion. There was some altercation. Two of the Negroes chased the sergeant away. The Negroes then got the prosecuting witness in the car, and took her to a place about two miles away in a wooded road, where the crime was committed. They were then driving her somewhere when a police car came along, and they abandoned her and their car and ran away. The two appellants returned to their homes the next morning, then they hid out in the the woods for several days, and finally gave themselves up to the police on Sunday morning, January 13th. The other traversers had meanwhile been arrested, and appellants knew they were being looked for.

The appellants testified, not in their defense, but to show the circumstances under which their statements were obtained. Peters said he was 22 year old. That he was brought to the station house of the State Police near Belair between 9 and 10 o'clock Sunday morning. He was given meals there and about 1 o'clock he was questioned. That he first made a statement which was not taken down. He was questioned by Detective Sergeant Cassidy, and there were a number of other officers present. He said Cassidy said to him: "Peters, you are telling a damn lie. I want you to tell the truth; you are going to tell the truth and we have got ways of making you tell the truth, because if we put the electric instrument on you, you will have to tell the truth." He said Cassidy explained the way that Robert Gilbert, one of the other traversers, previously arrested, had made

his statement, and told Peters he had to make his the same way. Peters said he agreed to do this because he didn't want the man to put any instrument on him. So he made the statement which was taken down. Then he said Sergeant Cassidy called up Demby, the other appellant, and Demby made a statement just like Peters had made first. And he said Sergeant Cassidy said: "Demby, you ain't telling nothing but a damn lie. You will look like a fool or an ass if you get up and say something different from the way the rest." He said Cassidy told Demby that Theodore Peters, one of the other traversers had agreed to the Robert Gilbert statement, and now Roy Peters had agreed to it. And he told Demby that he was going to have Roy Peters dictate a statement to Demby. So Roy Peters dictated the statement and Demby said "all right." The next day the statements were brought up, and both of the appellants signed them. Peters signed his first and then Demby signed his. Peters said the second statement is not the truth. The first statement was. And he testified as to the difference between the two statements. Without going into detail, the main difference was that he claimed in his first statement that the prosecuting witness agreed. He had the second statement read over to him before he signed it and he then had said it was all right. They treated him all right at the station, gave him meals, no threats and no promises were made. Demby's statement was read to him. The reason he signed was "because I didn't want those fellows to put no instrument on me."

Demby, the other appellant, testified that he was 22 years of age. His statement added the further particulars that he was married, had four children and was not living with his wife. He said he was brought back to the station or the barracks from Lakeside Inn, where he had called up and told the officer who he was. That on the way he started to tell the officer something in answer to a question, and the officer told him to shut up, he was telling a lie, to go downstairs and think it over and when he came back, to tell the truth. He didn't know

which officer it was. That when he came back upstairs he started making a statement and the officer asking him wouldn't accept it. He said the officer told him he was telling a damn lie and he would look like a damn fool if he got up in Court and said one thing and made himself out an ass, and the rest of them would say another. The officer said that Robert Gilbert, another traverser, had made a statement and Peters, the other appellant, had been told about it, and he was going to get Roy to tell the witness just like Robert had stated, and the witness was to say the same thing. He said the officer told him something about an electric charge. He didn't know what it was, and he didn't know whether he had one or not. He signed the statement, and he also witnessed the statement of Roy Peters. Sergeant Cassidy was the man that told him not to be a fool, not to be an ass, and told him about the electric charge. He was fed once or twice before giving his statement. He said the statement was untrue in a number of particulars, but he did not say that the prosecuting witness consented.

Sergeant Cassidy of the Maryland State Police, who questioned all of the four traversers, said there were no threats, promises or offers of immunity of any kind or character whatsoever made to either Peters or Demby by him or by anyone else in his presence. That the statements about the electric instruments were untrue. That he told them nothing at all along that line. Nor did he tell them that they were telling a damn lie and they had to tell the truth. He said it was untrue that there were two statements made. He was there the whole time. There was one statement taken from Roy Peters and there was one statement taken from William Demby. They were the ones that were typewritten and signed the next day. There was no first statement from either of them taken and not used. The statements offered in evidence were the only ones given and were those given by Peters and Demby. His recollection was that Demby's was taken first and Peters was the second one. He thought they were signed the same day, but he was not

absolutely certain about that. Several officers were present when they were signed. There were six witnesses to the statement, but he was not certain whether they were all present at the time of the signing. He was in Baltimore on Sunday when he heard the appellants had turned themselves in. He came from Baltimore to the barracks. The State Police does not use a lie detector. It has been used by them once, in 1932. The State Police of Pennsylvania brought one down on the Eastern Shore, and they used it there. The sheriff of Harford County testified that he was present when the statements were made by Demby and Roy Peters, and no threats or promises were made at any time when he was present. Trooper Everhart had the appellants under his control while at the barracks. No threats or promises were made to them while in his custody. Sergeant Trumpower, of the State Police, arrested the two appellants on January 13th, near the Lakeside Inn; put handcuffs on them, took them to the barracks, gave them breakfast, called Detective Sergeant Cassidy. While they were in his custody, no threats or offers of immunity or inducement were made to them. Lieutenant Durham was present during the questioning, and said neither he nor any one else made any threats, promises, offers of immunity or any violence. He saw the appellants sign the statement. That he was present when all of the questions were asked. None of the conversation that was in the two confessions took place out of his hearing. He heard nobody say to Roy Peters that Robert Gilbert had told the story differently and he had better make his story agree with his. None of the officers interviewed appellants privately. Mr. Farb, stenographer from headquarters, took the statements down in shorthand. There were present at the time the statements were made, in addition to himself, First Sergeant Reilly, Corporal Landbeck, Corporal Smith, Sheriff Stevens, Mr. Farb and Detective Sergeant Cassidy. The statements were typed and read over to the men the next afternoon, very slowly, by Sergeant Cassidy. They followed him line for line, said what they

said in the statements was true, and signed them. Similar testimony was given by Sergeant Landbeck, Corporal Smith, Trooper Lindsay and Mr. Farb, who took down the notes. They all denied that any statements were made by Sergeant Cassidy when the appellants were questioned, that they were lying, they had to tell the truth, and that the officer had an electric instrument to make them·tell the truth. The shorthand took Mr. Farb about 30 or 45 minutes to take down.

The confessions of the other two traversers as well as those of appellants were admitted in evidence, but as they did not appeal, the question whether these statements were properly obtained is not before us. The Court said that each confession would be received only as evidence against the person making it. This practice has been several times approved by this Court. *Markley v. State,* 173 Md. 309, 196 A. 95; *Jackson v. State,* 180 Md. 658, 26 A. 2d 815; *Jones v. State,* 185 Md. 481, 45 A. 2d 350. The admissibility of confessions in evidence is primarily a question for the trial court. Its action is subject to review if it appears there has been an abuse of discretion. The burden of proof is, of course, upon the State to show that any confession is freely and voluntarily made, and is not obtained by threats or inducements. The State clearly met that burden in the instant case by the testimony of all the officials present when the testimony was taken. There was no undue detention by the officers before the confessions were made, and no violation of due process as in *Anderson v. United States,* 318 U. S. 350, 63 S. Ct. 599, 87 L. Ed. 829, and *Malinski v. New York,* 324 U. S. 401, 65 S. Ct. 781, 89 L. Ed. 1029. The appellants were ·arrested in the morning, were fed, and then at 1 o'clock were questioned. Some point was made with respect to the confessions of the other traversers, which were obtained under different circumstances, and which were supposed to be the basis for the confessions of the appellants. These other confessions, whether improperly obtained or not (and we do not mean to suggest or intimate that they were), could

have no bearing on the confessions of appellants, unless the latter were forced or intimidated into making theirs like the others. If the appellants read the other confessions, agreed they were true, and made their statements to accord with them, appellants' confessions would still be admissible, whether the others were or not.

In almost every serious criminal case where a confession is offered in evidence, its admissibility is questioned. While every care should be taken not to force or persuade a prisoner to incriminate himself while he is being detained, and has no counsel to advise him, nevertheless, if he chooses to unburden himself and tell the truth, when he is questioned, there is no reason not to receive this evidence, if it is given voluntarily. The difficulty arises because, when the trial occurs, the accused is almost always ready to say that the incriminating statements he has made were not obtained voluntarily, but were obtained as a result of some form of coercion or persuasion. The trial judge then has to determine from his story and the testimony of the officers who took the confession, whether there is any reason to refuse the evidence. The first question is the admissibility of the confession, but the jury, or, as in this case, the Court sitting as a jury, is not barred by its admission from passing on the circumstances under which it was obtained or its credibility. They may disregard it entirely in reaching their verdict. In the case of *McCleary v. State,* 122 Md. 394, at page 410, 89 A. 1100, at page 1106, a memorandum was filed denying a motion for reargument. The Court said: "In most cases where an alleged confession is offered, there is some contradiction as to the circumstances under which it was made, and it then becomes necessary for the trial court to weigh the evidence, as was done in *Nicholson v. State,* 38 Md. 140, 141, and admit or reject the confession according as the court shall conclude that the State has met the burden of establishing the voluntary character of the confession. That was what was done in this case. But beyond and in addition to this, while the evidence given as to the circumstances under which the

confession was made is to be considered in determining its admissibility, it is also to be considered in determining the weight to be given to the facts embodied in it; that is, the substance of the confession itself." If the Court, in the first instance, should reject every confession when a claim is made by the accused that it was improperly obtained, no confession would ever be admitted. Every accused, by his own testimony, could prevent such an important piece of evidence from being used against him. *Lubinski v. State*, 180 Md. 1, 22 A. 2d 455. We conclude, in the case before us, no error was committed by the trial court in admitting the confessions of the appellants in evidence.

The appellants also contend that this Court should review the entire record, and reverse the cases, because the evidence is insufficient to sustain the convictions. This contention is based upon the wording of Chapter 1068 of the Acts of 1945, adding Section .88A to Article 5 of the Annotated Code. The purpose of Chapter 1068 was stated in the title as "providing for Appeals in criminal cases where an oath '*forma paupris*' (*pauperis*) is filed." The body of the statute, after directing that the record in cases where such an oath is filed, shall be certified at the expense of the State to this Court, further states "and the Court of Appeals shall review any reviewable errors therein, without regard to technical errors, defects or exceptions which do not affect the substantial rights of the parties."

The Constitution, Article 15, Section 5, provides that in the trial of criminal cases the jury shall be the judges of law as well as of fact. This provision is not by any means universal in the several states of the Union, but it has been well recognized in Maryland, and has been passed upon by this Court in many cases. In the early case of *Franklin v. State*, 12 Md. 236, 249, Chief Judge LeGrand filed an opinion in which he stated that it was apparent from the debates at the Constitutional Convention that opposing views as to the powers of a jury in a criminal case prevailed in different parts of the State and

this provision was inserted to make the law universal. Judge Bartol, who delivered the opinion of the Court, said that the Constitutional provisions was merely declaratory and did not alter the pre-existing law regulating the powers of the Court and jury in criminal cases. In the case of *League v. State,* 36 Md. 257, Judge Bartol, then Chief Judge, said that the effect of the constitutional provision, coupled with the provision in the Code, was that any person might elect to have a trial by the Court instead of a jury, and that when such an election was made, the Court was substituted for the jury and had the same duties and functions to perform in passing upon the guilt or innocence of the accused. In the cases of *Berger v. State,* 179 Md. 410, 20 A. 2d 146, *Meyerson v. State,* 181 Md. 105, 28 A. 2d 833, and *Bright v. State,* 183 Md. 308, 38 A. 2d 96, this Court was asked to consider the legal sufficiency of the evidence in criminal cases to sustain convictions. The convictions in these cases were by a Court sitting as a jury. It was held that in such cases, the Court is substituted for the jury, has the same functions in passing upon the guilt of the accused, and the legal sufficiency of the evidence is not before this Court in review. All of these cases were decided before the passage of the Act of 1945, and it is contended by the appellants that the effect of that act is to change the law with respect to the interpretation of the constitutional provision. In other words, it is urged that the constitutional provision applies only to juries and not to Courts, that the Legislature has changed the interpretation we have placed upon it, making it apply to Courts sitting as juries, and has given this Court on appeal the right to review the sufficiency of evidence in cases tried before Courts sitting as juries. It is not necessary for us to determine the constitutional question, whether the Legislature could make such a change, because, in our opinion, it has not, by the passage of the Act of 1945, done so, or intended to do so. We are given authority only to review "any reviewable errors." No errors are newly made reviewable, nor is the long continued construction of a section of the Constitution

a "technical errors, defects or exceptions" which we are supposed to disregard. What the Legislature meant was, undoubtedly, that this Court in cases where a sentence of death has been imposed, shall disregard the method by which substantive questions are brought before us, and shall determine such questions, regardless of whether all the procedural rules have been obeyed or not. In the very recent case of *Walker v. State,* 186 Md. 440, 47 A. 2d 47, we determined that Section 88A did not empower us to review a sentence. We now hold that it does not authorize us to examine the sufficiency of the evidence presented.

There is embodied in Article 5, Section 88, a provision that whenever any writ of error or appeal in *any* criminal case is brought before us, we "shall give judgment without regard to technical errors, defects or exceptions, which do not affect the substantial rights of the parties." That provision has been in our statute law since December 15, 1933, when it was enacted by Chapter 98 of the special session of 1933. Its wording is very similar to the Act of 1945, but it has never been held, or even argued, as far as we are informed, that it gives this Court the right to review the evidence in criminal cases and pass upon its sufficiency. There have been a number of cases, including the Berger, Meyerson and Bright cases, *supra,* which have continued to hold otherwise since the enactment of this statute, and without reference to it. In the Bright case it was suggested that Rule 9 of our General Rules of Practice and Procedure gave us the right to review the sufficiency of the evidence. No reference was made to Section 88, Article 5. We rejected the contention made on the rule and reaffirmed the doctrine established in the League case, *supra.*

It is true that in other states under other constitutions and laws it has been held that the appellate courts may review the facts in capital cases. *Commonwealth v. Gricus,* 317 Mass. 403, 58 N. E. 2d 241; *People v. Crum* 272 N. Y. 348, 8 N. E. 2d 51. And that has recently been designated "the more enlightened rule" by Mr. Justice Frankfurter in his dissenting opinion in the case of *Fisher*

*v. United States*, 328 U. S. 463, 90 L. Ed. 1382. However, that may be, we cannot adopt such a rule by judicial fiat, where the contrary practice is embedded in our Constitution and fortified by numerous earlier decisions. We do not, as we have said, find it necessary to decide whether such a change can be made by the Legislature or whether it requires an amendment to the Constitution. We find only, in this case, that the Legislature has not indicated its intention to give us the right, in a capital case, to review the facts in order to determine their sufficiency to uphold a conviction.

The judgments will be affirmed.

*Judgments affirmed, without costs.*

MARKELL, J., filed the following concurring opinion:

After some hesitation I agree that the legislative mandate to "Review any reviewable errors" is applicable only to questions otherwise, by statute, made reviewable and not to any and every question which this Court without any statutory guide might hold to be reviewable. It may be, however, that this Act of 1945 makes such questions reviewable notwithstanding failure to object, except or take other technical action. It would accord with reason and justice and with provisions in other jurisdictions that a man should not be hanged for his lawyer's failure to object or except to clear prejudicial error.

There can be no doubt as to the power of the Legislature to add to the reviewable questions or to change the methods of review on appeals by the accused. The constitutional provision that the jury shall be the judges of the law and the facts is (a) a procedural provision and (b) a constitutional right of the accused of which he can not be deprived by the Legislature. A verdict of acquittal can not be made reviewable on motion for a new trial, on appeal or otherwise. *State v. Rosen*, 181 Md. 167, 28 A. 2d 829. But judgments of conviction may be, and from time to time, have been, made reviewable, at the instance

of the accused, to such extent and in such manner as the Legislature may deem fit.

In Maryland from early times, unlike many other jurisdictions, the constitutional right of trial by jury could be, and now commonly is, waived by the accused even in capital cases. In this respect there is no difference between the right of trial by jury at common law or under the Constitution of 1776 and the right under the Constitution of 1851 and the subsequent constitutions containing provision that the jury shall be the judges of the law and the facts. This right may be waived without statutory provision for procedure. By such waiver the constitutional provision that the jury shall be the judges of the law and the facts ceases to be a constitutional right but (in the absence of other legislative provision) is applied by analogy, as a procedural provision, to trial judges sitting "as a jury," as if they were actually a jury. Thus both in jury and non-jury cases this Court has repeatedly held that even the legal sufficiency of the evidence of guilt is not reviewable by this Court on appeal in capital or other criminal cases. The Legislature has not made any other procedural provision for review of such questions; e. g., it has not made obligatory the exercise by trial judges, at the request of the accused, of the power to give advisory instructions. There is, however, no such thing as a constitutional right to hang a man—or be hanged—without evidence. The multitude of decisions of this Court involve no such perversion of constitutional principles.

In civil cases, both in Maryland and in the federal courts, an analogous situation long existed until changed by existing rules of civil procedure. The right of the jury to decide questions of law in criminal cases is no more sacred than the right to decide questions of fact in civil or criminal cases. In either civil or criminal cases when there is no jury at all, the right as a constitutional right necessarily ceases to exist and becomes by analogy a mere rule of procedure until supplanted by other legislative provision for procedure.

A constitutional provision, especially in matters of procedure, may have a different effect standing alone from the same provision in conjunction with statutory provisions. *Ghinger v. Bachtell*, 169 Md. 678, 182 A. 558. As Mr. Justice Holmes has said, a word may not have the same meaning in a constitution as in a statute. *Towne v. Eisner*, 245 U. S. 418, 425, 62 L. Ed. 372.

The following memorandum was filed on Motion for Reargument:

MARKELL, J., is of the opinion that under the recent Fourteenth Amendment decisions of the Supreme Court legally sufficient evidence of guilt is a requisite of due process and therefore this Court, notwithstanding its own previous decisions to the contrary, should now decide this Federal question (raised in the motion for reargument) as to the legal sufficiency of the evidence.