## CARROLL WILSON RASIN *v.* STATE OF MARYLAND.

*Criminal Law—Province of Court and Jury—Receiving Stolen*
*Money—Defendant as Witness—Called for Special*
*Purpose—Review on Appeal.*

Under Const., art. 15, sec. 5, it is for the jury, on a prosecution for receiving stolen goods or money, to determine whether the evidence admitted shows defendant guilty of larceny rather than of receiving stolen goods.       pp. 435, 436

A motion by defendant to strike out testimony for the State as proving a crime different from that alleged in the indictment is in effect a demurrer to the evidence, which cannot be entertained in a criminal case.       p. 436

On a prosecution for receiving money stolen from a banking firm, evidence that an employee of such firm, called as a witness

by defendant, but in no way involved in any transactions with the latter, had lost a considerable sum in a crap game, was inadmissible.                                    pp. 436, 437

Code, art. 27, sec. 318, providing that one convicted of larceny, or as accessory thereto before the fact, shall restore the money or goods taken, does not require one whose money has been taken to wait until after conviction to recover his money.

p. 439

Even though defendant was called to the stand merely to testify as to whether a statement which he made before the trial and which was read at the trial was voluntary, any statements made by him as a witness, even though amounting to a confession, if made in the presence of the jury, could be commented on by the state's attorney.          pp. 437-441

Even after a confession has been admitted, it may be ruled out by the court, if satisfied that it was not free and voluntary, and the jury instructed that it is not to be considered.

p. 441

Unless objections are reasonably made and exceptions taken, questions of evidence cannot be considered on appeal.

pp. 441, 442

Remarks by the state's attorney in regard to defendant's testimony are not ground for reversal unless it appears that the jury were misled or influenced to the defendant's prejudice by such remarks.                                   p. 442

*Decided July 8th, 1927.*

Appeal from the Criminal Court of Baltimore City (O'DUNNE, J.).

Criminal prosecution of Carroll Wilson Rasin. From a judgment of conviction, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Robert F. Leach,* with whom were *Curran & Leach* on the brief, for the appellant.

*Willis R. Jones, Assistant Attorney General,* with whom were *Thomas H. Robinson, Attorney General, Herbert R. O'Conor, State's Attorney for Baltimore City,* and *Hilary W. Gans, Assistant State's Attorney for Baltimore City,* on the brief, for the State.

SLOAN, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Criminal Court of Baltimore City. The appellant, Carroll Wilson Rasin, had been indicted by the grand jury of Baltimore City for having unlawfully had and received the goods, chattels, moneys and property of William Wallace Lanahan and others, to wit, the sum of six hundred seventy-five dollars, the said Carroll Wilson Rasin knowing the same to have been feloniously stolen, taken, and carried away. The appellant elected to be tried by a jury, whose verdict was guilty as charged in the indictment, and from the judgment thereon this appeal is taken.

It appears that on August 21st, 1926, a shortage was discovered in the accounts of W. W. Lanahan & Co., a copartnership, amounting to $113,705.57. This shortage had been an accumulation of abstractions of funds by Norman H. Fishach and J. Stephen Kelley covering a period of about four years. It further appears that audits of the books of the Baltimore office of Lanahan & Co. were made twice a year at stated periods until August 21st, 1926, and on these occasions Fishach and Kelley had been able, through drafts made on the New York branch of Lanahan & Co., to cover the shortages for the times consumed in making the audits. On this occasion, however, their plans failed to work out, and the shortages covering the whole period of the peculations came to light. It develops that a very large part of the money taken by Fishach and Kelley from Lanahan & Co. had gone to the appellant. Fishach had been the cashier in Lanahan's brokerage and banking office, with Kelley as his ssistant, and each was kept constantly informed by the other of his movements with respect to the taking, from time to time,

of the cash making up the shortage. Fishach, on account of ill health, ceased to be active in his work after December 24th, 1925, and after that Kelley performed the duties theretofore performed by Fishach. Fishach died August 28th, 1926. It appears from the record that some time in 1922 the appellant brought a check to Lanahan's office, which he asked Kelley to cash. Kelley asked Mr. Lanahan whether he should cash it and was very emphatically told that he should not. Thereafter it appears that the appellant did not come into the office of Lanahan & Co., but frequently, perhaps a hundred times, he called Fishach or Kelley on the 'phone and arranged with one or the other to meet him outside of the office, usually somewhere in the Calvert Building, with such amounts of money as he requested, and they would take the cash from the cash drawer in the cashier's cage, meet the appellant at the appointed place, hand over the cash to him, and take from him a check for the amount, which was to be turned in when informed by the appellant that the same would be good. The demands of the appellant on Fishach and Kelley came much faster than his ability to make good his checks, until finally Fishach, Kelley, and the appellant found themselves so involved in their shortages with Lanahan & Co. that there was no hope of their being able ultimately to conceal the peculations, and the exposure came on August 21st, 1926.

The indictment in this case is founded on a check dated June 5th, 1926, drawn on the Park Bank, for $675, signed C. Wilson Rasin, which was surrendered by Kelley to Daniel H. Flynn, of the firm of of Lanahan & Co. August 22nd, 1926. On the day following the surrender of the check by Kelley, a conference was held at the office of L. Vernon Miller, counsel for Lanahan & Co., at which the appellant, and Mr. Duer and Mr. Flynn, of Lanahan & Co., and Mr. Miller, were present. At this meeting the whole matter was discussed, and Mr. Rasin made the claim that he had borrowed amounts of money from time to time from Fishach and Kelley, and there contended that whatever he owed of

this money he owed to them. He began by claiming that he owed them $2,000, but this was increased from time to time during the conference, until he balked at the sum of $45,-000. It developed later, however, that he did admit owing $27,000. It appears from the record that another conference was held at the office of the state's attorney on September 4th, 1926, at which were present Mr. O'Conor, the state's attorney, Mr. Adams, deputy state's attorney, Messrs. Lanahan, Duer and Flynn, of Lanahan & Co., Mr. Vernon Miller, counsel for Lanahan & Co., Mr. Piper, counsel for Rasin, and Mr. Rasin. At this conference the appellant made the statement which was offered in evidence without objection, while Mr. Flynn, the first witness for the State, was on the stand, designated, "Statement of Carroll Wilson Rasin, made in connection with State's Attorney's Investigation of Defalcations in the Office of W. W. Lanahan and Company," which will be referred to later on in this opinion.

There were three exceptions taken by the appellant which are the subject-matter of this appeal. The first was on the denial of the motion of the appellant's counsel to strike out the testimony of Kelley concerning the $675 check, counsel saying: "If Kelley's story is true—if the State's theory is true and Kelley has stated the truth concerning the $675 check, it is not evidence to prove this indictment, because it makes out a case of larceny and not a case of receiving stolen goods." Section 5 of article 15 of the Constitution of Maryland provides that "in the trial of all criminal cases the jury shall be the judges of law as well as of fact." The appellant selected as the tribunal to try his case a jury, who, under the constitutional provision quoted, were to be the judges of the law as well as of the facts. Under such circumstances the court only determines the admissibility of testimony and the competency of witnesses. *Jules v. State,* 85 Md. 313. The effect or weight of the evidence, once admitted, is for the jury, and if the jury in this case were of the opinion that the appellant received from Kelley the sum of $675, which Kelley testified he stole from Lanahan &

Co., knowing it to have been stolen, then their verdict would logically be "guilty." If, in the opinion of the appellant's counsel, the proof showed that the appellant, if guilty of anything, was guilty of larceny and not guilty of receiving stolen goods, we presume they argued the point to the jury, and that they, being the judges of the law as well as of the facts, considered the issue of larceny or receiving stolen goods, and in this case decided that the appellant was guilty of receiving and not guilty of larceny. On the theory of the appellant himself, the only charge upon which he could be tried was that of receiving stolen goods. He made the claim, and reiterated it, that he had been borrowing money from Fishach and Kelley, and that he had not gotten anything from Lanahan & Co. The appellant never admitted that he had been guilty of larceny, and on his own theory the only thing left for the jury to say was whether he knew Kelley had stolen this sum of $675 from Lanahan & Co., which he asserted he had borrowed from Kelley.

The motion of the appellant's counsel amounts to a demurrer to the evidence, and this court has repeatedly held that such motions cannot be entertained in criminal cases, the Court saying, in *Dick v. State,* 107 Md. 11, 17: "The motion to strike out the testimony was in legal effect a demurrer to the evidence and an attempt to obtain an instruction from the court to the jury to render a verdict for the defendant, and it is well settled that this cannot be done in Maryland, where the jury in criminal cases are the judges of the law and of the legal effect and legal sufficiency of the evidence, and the court only determines the admissibility of the evidence." See also *Bloomer v. State,* 48 Md. 539.

The second exception was to the proffer of the appellant to prove that the witness Robert E. Ensor, manager of the stock department of Lanahan & Co. had, on April 30th, 1926, lost at a crap game at 340 Fallsway, Baltimore, the sum of nine hundred dollars in cash. The witness had been called by the appellant, apparently to prove that it was a custom among the employees of Lanahan & Co. to have their own

checks cashed at Lanahan's banking house, and that in the case of Ensor he had been in the habit of making bets on horses. We cannot imagine what possible connection there could be between Ensor's transactions and those of the appellant. There is nothing in the testimony of Kelley or the appellant to show that either of them had any dealings with Ensor, or that Ensor's transactions touched the appellant anywhere. Counsel for the appellant, at the hearing of this appeal, stated that the appellant did not abandon either the first or second exception, but that they would not argue them, and presented no authorities applicable to either exception. The only authorities presented as to either of them were several with reference to the first exception, applicable only to states where it was the duty of the court to charge the jury as to matters of law in criminal cases.

The exception on which the appellant stands is the third, and that was to the comment in his argument by the state's attorney on a statement made by the appellant, when called to the stand for the purpose of testifying as to the voluntariness of his alleged statements, confessions, or admissions, prior to the statement of September 4th, 1926. While Mr. Flynn was on the stand a stenographic report, which covers fifteen pages of the record, setting forth in detail the questions by Mr. O'Conor, state's attorney, and Mr. Adams, his assistant, as well as the answers of the appellant, with here and there an interjection by appellant's counsel, at the conference held on September 4th, 1926, at the office of the state's attorney, was offered in evidence. The first question of Mr. O'Conor, according to the record, was: "Mr. Rasin, of course you understand, I am sure, that in what we are attempting to do it is without thought or expectation of any consideration or promises from us to you for what you will say?" to which the appellant answered, "Oh, yes;" Mr. O'Conor next saying, "I mean that I cannot be put in the position of having offered you any immunity in regard to what might come, and of course you understand that. You know that these statements show that certain amounts of

money were gotten or taken from Lanahan & Co. and turned
over, and I just wondered whether you would care to say
just what your association had been with Fishach and Kel-
ley?" to which the appellant answered: "When Mr. Miller
sent for me I admitted that I owed Mr. Fishach some money
and Mr. Kelley. They cashed checks for me and sometimes
they would hold them." The next question of Mr. O'Conor
was: "What I meant was, have you any explanation to offer
as to why so much cash was given to you by two such men
in such amounts, over such a period of time, in the manner
in which it was done?" to which the appellant answered:
"No, I have no explanation to offer." The state's attorney
then asked how much they did cash for the appellant, to
which he answered that he did not know, but that he thought
he owed about twenty-six thousand and some dollars; that he
owed most of it to Fishach, the balance to Kelley. The ap-
pellant admitted in this statement that one of the checks
which he had given, but which was not cashed, was one for
$675 drawn on the Park Bank, and which was the one on
which the indictment is based. He stated that he did not
have any business with Fishach other than the cashing of his
checks.

After this statement or stenographic report was read to the
jury, Mr. Flynn continued his testimony. J. Stephen Kelley
was then called and apparently his testimony was carried
on at great length. Thereupon Henry L. Duer, a member
of the firm of Lanahan & Co. was called to testify as to the
voluntariness of the statements made in the two conferences
prior to September 4th by Mr. Rasin, and Mr. L. Vernon
Miller, attorney for Lanahan & Co., was called, and his
examination was to the same effect. There was some effort
made, when these witnesses were on the stand, to show that
some inducement was made to the appellant to confess. Mr.
Duer did testify that if he could find any way whereby the
appellant could raise the money to cover any substantial part
of the shortage he would have been glad to have such infor-
mation, but both he and Mr. Miller stated very positively that

they made no offer, and had no intention of promising immunity to the appellant in case he should refund to Lanahan & Co. the money which the appellant admitted he had received from them through Fishach and Kelley. While section 318 of article 27 of the Code provides that, "Every person convicted of the crime of simple larceny to the value of $5.00 or upwards, or as accessory thereto before the fact, shall restore the money, goods or things taken to the owner, or shall pay him the value thereof, and be sentenced to the penitentiary for not less than one year nor more than fifteen years," still one whose money has been taken is not obliged to wait until after conviction before seeking to recover his money. *Downs v. Baltimore City,* 111 Md. 689. There is no evidence that either Mr. Duer or Mr. Miller made any threats or held out any inducements to the appellant to make the statements which are attributed to him in the record. The nearest approach to anything of the kind was in the testimony of the appellant, when he took the stand on the preliminary question as to the voluntariness of his statement or confession, when he said of the conference at the interview on August 23rd, "Well, I told them if I could raise the money that it would be paid with the distinct understanding that there was no criminal action to take place," to which, he said "they agreed." After Mr. Miller's testimony as to the voluntariness of the statement or confession, the appellant was called to the stand on his own behalf, his counsel saying, "Now, if your honor please, we put him on the stand, and of course he takes the stand simply for that one purpose, on the preliminary question," the court saying: "Only on the preliminary question touching the voluntariness of the answers." The jury had already heard the questions put to, and the answers made by, the appellant in the state's attorney's office on September 4th; that was in without objection. This statement contained practically everything said at the former conferences. The jury did not retire, and there seems to have been no request for their retirement, during the examination of Mr. Duer, Mr. Miller, and the appellant, as

to the voluntariness of the answers of the appellant at the
two conferences prior to September 4th, 1926. In the closing
argument by the state's attorney he directed part of his re-
marks to the question put to Mr. Rasin, and what was said
by them, Messrs. Duer and Miller, or either of them, as to
what would happen upon the raising of the money, and his
answer thereto, "Well, I told them if I could raise the money
that it would be paid, with the distinct understanding that
there was no criminal action to take place." The answer
was certainly not responsive to the question, and when the
appellant made this answer he stepped aside, for the time
being, from the purpose of the examination which was being
conducted, and instead of saying that Mr. Duer, Mr. Miller,
or any of those present, offered any inducements or made any
threats, he testified as to what he said, and the inducement
he, the appellant, proposed to offer as the price for im-
munity. There is no suggestion in the testimony that any
of those present accepted the bargain except from the appel-
lant himself. The appellant made this proposal, and when
he went on the stand to testify as to voluntariness, he as-
sumed the risk of making statements which were aside from
the examination on the *voir dire* as to the confession. If, in
his examination as to voluntariness, whereby the appellant
attempted to show that any statements made by him were
with a promise, express or implied, that he would not be sub-
jected to a criminal prosecution, he made a statement which
might itself be construed into a confession, it is simply his
misfortune and the fault of no one else. If the jury had
retired and the statement referred to had been made out of
the presence of the jury, it could not have been referred to by
the state's attorney, though the State could have called wit-
nesses to the stand to show that the appellant had given this
damaging testimony against himself in their absence.

In *Nicholson v. State,* 38 Md. 140, 157, this Court said:
"Very great injustice might be done to the prisoner by allow-
ing a confession made by him to be given in evidence before
the court is satisfied that it was voluntarily made; for, as

suggested in the appellant's brief, it would be difficult for the jury, in deciding the question of admissibility, not to be influenced by the confession itself, which they ought not to hear unless its admissibility is first clearly established to the satisfaction of the court." In the present case there does not appear to have been any motion made to strike out the alleged confession after witnesses as to the voluntariness of these statements or confessions had been heard. The practice in this state is set forth in *Biscoe v. State,* 67 Md. 6, 10, wherein Judge Robinson said: "Before permitting the witness to testify in regard to the confession, the court ought to have ascertained, first, whether any inducements at the time or prior thereto, had been held out to the prisoner; and in the next place, whether he was influenced by such inducements in making the confession. The court may, it is true, rule out a confession, even after it has been admitted in evidence, if satisfied in the subsequent progress of the case that it was not a free and voluntary confession, and may instruct the jury that it is not to be considered by them in determining the question as to the guilt or innocence of the prisoner; but, once in, it may have an influence more or less prejudicial against the prisoner. The preliminary question, therefore, as to its admissibility, is one which ought in all cases to be decided by the court before it is permitted to go to the jury."

In the present case, however, after the testimony as to voluntariness, all of which is conspicuous for the fact that there was more testimony bearing on the facts as to the relationship between the traverser and Kelley and Fishach than on any question as to threats, inducements, or immunity, there were no objections made and no exceptions taken, and it was all testified to in the presence of the jury, which remained during the entire preliminary examination as to the conferences held prior to the detailed statement of the appellant which had been offered by the State and heard by the jury at the beginning of the trial without objection. It is very clear from the opinion of Judge Parke, in *Klecka v. State,* 149 Md. 128, that unless objections are seasonably

made and exceptions taken, questions of evidence cannot be considered by this court. This certainly applies to the statement of September 4th, admitted without objection.

With regard to the comments of the state's attorney upon the testimony of the appellant, what was said in *Toomer v. State,* 112 Md. 285, 293, applies here: "In the absence of something to show that the jury was misled or influenced to the prejudice of the prisoner by such remarks, the lower court would not have been justified in setting aside the verdict, nor would this court be warranted in reversing the judgment appealed from. In the case of *Dunlop v. United States,* 165 U. S. 486, the court said: 'If every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy and in the excitement of trial even the most experienced counsel are occasionally carried away by this temptation.' See also *Esterline v. State,* 105 Md. 629."

The appellant so entangled and involved himself in the shortages at Lanahan & Co.'s, and there was so much evidence before the jury on which they might conclude that he instigated the thefts of Fishach and Kelley, that it is difficult for us to see wherein or whereby any remarks made by the state's attorney could have done the appellant any harm or have made his plight before the jury any worse than it was.

*Judgment affirmed, with costs.*