WILLIE GRAY TAYLOR, ET AL. *v.* STATE OF
MARYLAND

[No. 24, October Term, 1946.]

*Decided November 22, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Austin L. Fickling* and *Leon A. Ransom* for the appellant, Taylor.

*Robert W. McCullough* for the appellant, Washington.

*William Curran, Attorney General,* with whom was *J. Edgar Harvey, Assistant Attorney General,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

Here considered are two appeals in one record, one by James Clarence Raymond Washington, a negro boy sixteen years of age at the time of the trial, and the other by Willie Gray Taylor, a negro boy fifteen years of age at the time of the trial, from verdicts of guilty and sentence of death on conviction of rape of a young white woman, hereinafter known as the prosecuting witness.

The case was tried before two judges sitting as a jury.

The evidence shows that on the night of March 16, 1946, these two appellants with two other negro youths, Charles and Walter Ross, were playing "craps" behind a schoolhouse near their homes in Prince George's County. After the game, they all went to and sat in an abandoned automobile on the side of the road. While in this car they entered into a discussion and conceived the plan of surprising and robbing the occupants of any car they might find parked on Sheriff's Road known as "Lover's Lane." They left the car and went to the home of Charles and Walter Ross, where they secured a rifle and came back to Sheriff's Road with the intent to hold up and rob any persons they might find parked there. While walking up the road appellant Taylor claims that they met a car and thinking he might be recognized, he then left Washington and Charles Ross and returned to the abandoned car alongside the road and waited until the other boys returned. Taylor said Walter Ross also left and went home. He said Washington came back to the abandoned car and gave him $10 of the stolen money.

The State offered the evidence of the prosecuting witness and Beyer, in spite of what Taylor says, that all four boys proceeded up the road and Taylor stuck a rifle into the front door of the car, forced the man, Beyer, who was with the young woman in the car, out of the car and robbed him of his money and watch. Taylor then jumped

in the car, grabbed the prosecuting witness by the arm, and by twisting her arm threw her to the ground. Taylor then raped the prosecuting witness while the other boys surrounded Beyer and kept a gun pointed toward him. After the prosecuting witness was raped by Taylor, Charles Ross and Washington then raped her. She then thought the boys would leave, but Taylor returned and raped her again and one of the other boys, whom she thought was Washington, raped her a second time. During this period of approximately two and one-half hours they kept Beyer covered with a gun in the immediate vicinity and during this period Taylor used very vulgar language to the prosecuting witnesss. She "hollered," called several times to Beyer and begged these boys to let her go. Beyer could do nothing because he was covered with a gun. The four boys then ran into the woods. Beyer heard someone say "they were going to shoot." Beyer, with the prosecuting witness, jumped into the automobile, started it, and went immediately to Beyer's home. Witnesses there testified that the prosecuting witness was in a hysterical condition, her clothes disarranged, and twigs and leaves in her hair. She was examined by a physician who testified that he found stains on her undergarments, a bruise on her wrist, and his examination showed that she had recently engaged in sexual intercourse. This assault was immediately reported to the police.

The next morning the police showed pictures from their files to the prosecuting witness and she identified the picture of Washington. The police then went to Washington's home where they found a pair of shoes which made marks resembling those at the scene of the crime. The police say that Washington was advised by his father and mother to tell the truth and upon information furnished by Washington, Willie Taylor and the Ross boys were arrested.

The two appellants, together with Charles and Walter Ross, were jointly indicted. The Ross boys removed their cases to another jurisdiction. Willie Taylor entered a

plea of not guilty and Washington entered a special plea of not guilty because of insanity. Taylor made a motion for severance and asked that he be tried separate and apart from other defendants. The court refused this motion and he was tried with Washington.

After the trial, where both the appellants elected to be tried before the court sitting as a jury, and after the aforegoing evidence and other evidence was presented together with alleged confessions made by Washington and Taylor, the appellants were found guilty and sentenced to death.

The appellant Washington assigns as error the admission of the two alleged confessions in evidence, and that, because there was testimony that he had the mentality of a child between nine and ten years of age, he was not capable of forming a criminal intent such as to justify the court in sentencing him to death for the crime he committed.

As both Taylor and Washington contended that their alleged confessions should not have been admitted in evidence, we shall first discuss the admissibility of these alleged confessions. Both appellants claim that the police officers threatened them and committed physical violence upon their persons, as a result of which they were forced to sign and make these alleged statements. The appellant Taylor had a cut on the side of his face which he and James Washington claim was inflicted by one of the officers on the way to the police station. Taylor's mother, father, and grandfather all testified that Taylor had no marks on his face when he left home the morning of the arrest. The police officers, with the exception of two who said that they never saw any mark on Taylor's face, testified that this mark was there when he was arrested. The State accounts for this mark on Taylor's face by the testimony of the prosecuting witness who said that, while Taylor was raping her, Charles Ross hit him on the side of the head with a gun and told him to get off and give him a chance. James Washington could neither read nor write and his alleged written confession was signed by

a mark, with his father, John T. Washington, signing as a witness. The officers testified that the statement was read to James Washington in the presence of his mother and father. Although the mother was on the stand, she did not say what occurred at the time this statement was taken. John T. Washington did not testify in the case. The officers vigorously deny that any threats were made against either of the appellants and that physical violence was used against either of them. The admissibility of a confession is usually contested in every serious criminal case. Of course, the burden of proof is upon the State to prove that a confession is fairly and voluntarily made and not obtained by force, threats, or inducements. Every care should be taken not to force or persuade one accused of crime to make statements incriminating one. If he, however, voluntarily makes statements incriminating himself, they are properly admissible in evidence. The trial court in this case, as in others, heard testimony both from the accused and the State as to the admissibility of these statements. They saw the witnesses. They observed their demeanor while on the stand and were able to judge of their credibility. This Court in convinced that the trial judges did not err in admitting these statements in evidence. *Markley v. State,* 173 Md. 309, 317, 196 A. 95; *McCleary v. State,* 122 Md. 394, 404, 89 A. 1100; *Rasin v. State,* 153 Md. 431, 441, 138 A. 338; *Demby and Peters v. State,* 187 Md. 7, 48 A. 2d 586. It was said by this Court in the recent case of *Lubinski v. State,* 180 Md. 1, at pages 7 and 8, 22 A. 2d 455, 459: "The Court, which passed on the admissibility of the evidence in this case, while sitting as a Court, also had to pass on its weight while sitting as a jury, and it must be presumed that he considered the latter in reaching his verdict. Both while sitting as a Court, and while sitting as a jury, he had the opportunity of observing the witnesses, and hearing the testimony, and we are unwilling to disturb his conclusion that the State had sustained the necessary burden of proof and that the confession should be admitted. Each

case has to be considered upon its own facts and circumstances. While the rights of the accused should be carefully protected, we cannot adopt the view that the trial Court erred in admitting a confession merely because the accused claimed that certain words were spoken to him, and that claim is entirely unsupported by any other evidence, and is flatly denied by the officer. The decision of such a question, when it arises, must be left largely to the discretion of the trial Court. We find no error in the ruling of the court * * *."

As to the contention that because Washington was deemed by two members of the State Board of Mental Hygiene to have the mentality of a child between nine and ten years of age he was not capable of forming a criminal intent, the case of *Spencer v. State,* 69 Md. 28, 13 A. 809, has long been a cornerstone in the law of this State on the question of criminal responsibility of one claiming to be insane and has been frequently referred to by this Court, and consistently followed by the trial courts. It was said in that case, at page 37 of 69 Md., at page 812 of 13 A.: "Was the evidence admissible to prove insanity; that is to say, such condition of mind as, by the law of the land, would render the prisoner irresponsible for his acts? There has been and is still a great variety of opinion entertained upon this subject, and especially among members of the medical profession who have written upon the subject of medical jurisprudence. Doubtless, the subject has been much elucidated by the repeated discussions that have taken place. But, in courts of justice, where definite principles, and not mere theories, must be given practical application, and that, too, with a view to the safety of society, as well as for the protection of the particular individual accused, tests that have received the sanction of experience, and the approval of the ablest jurists of our age, must be accepted and applied as the established law. And according to the law as we find it settled by the great preponderance of judicial authority, if the party accused be competent to form and execute a criminal design, or, in

other words, if, at the time of the commission of the alleged offense, he had capacity and reason sufficient to enable him to distinguish between right and wrong, and understand the nature and consequences of his act as applied to himself, he is a responsible agent, and amenable to the criminal law of the land for the consequences of his act. This is the leading test as applied by the courts of England, and certainly by a very large majority of the courts of this country."

When the defendant Washington entered his plea of not guilty by reason of insanity, at the request of his counsel and as ordered by the court he was examined by two members of the State Board of Mental Hygiene. They testified that James Washington possessed about 60 per cent. of normal intelligence. They said that from their examination they did not believe that he was legally insane on the date the crime was committed. Further that in their opinion he could distinguish between right and wrong and was able to realize the probable consequences of his acts, and that he was sane but feeble-minded on the day of the crime, March 17, 1946, and also on April 17, 1946, the time of the trial. To illustrate that he knew the difference between right and wrong, he was asked the question, "Now, Raymond, do you think it would be all right for me to steal?"; to which he replied, "Yes, if you don't get caught." The report of the commissioner of Mental Hygiene contained the following statement: "In discussing the actual offense when asked whether he was frightened, he said he was a 'little shaky' and then went on to say that he had told the other men not to attack the girl because it would get them into trouble. When asked what kind of trouble he meant, he raised his hands and showed the examiners his handcuffs. Again when asked what might happen to him, he said that if he was found guilty, 'I might die'." This report further stated that although he knew the difference between right and wrong and had an appreciation of the nature and consequences of his act, he was an easy follower of more aggressive and intelligent persons. The

evidence showed that he had stopped school the year before at the age of 15 in the fourth grade. In the case of *Hammond v. State,* 174 Md. 347, 198 A. 704, 707, the accused was indicted for murder. There was testimony by psychiatrists that the defendant "might be classed as a high grade moron or perhaps a low average member of his social group." This Court there held that that testimony was not adequate basis for a doubt that the defendant was mentally capable of making a voluntary confession and of appreciating the nature and consequences of the crime of which he had been convicted.

In *Walker v. State,* 186 Md. 440, 47 A. 2d 47, the appellant was sentenced to death for attempted rape. Although no plea of insanity was entered, evidence was offered by medical experts that the appellant was feeble minded and a moron. The appeal was dismissed by this Court.

In the case of *Deems v. State,* 127 Md. 624, 96 A. 878, Deems had been examined by two alienists at the request of the State, who testified that his intellectual development was equal to that of a child of nine or ten years of age. Capital punishment was imposed. A new trial was awarded for the reason that the question of defendant's insanity was not properly submitted to the jury. In that case the Court referred to the opinion of Chief Judge Alvey in the case of *Spencer v. State, supra,* and said, at page 628 of 127 Md., at page 879 of 96 A.: "The issue of insanity being thus distinctly presented, and the case not being wholly devoid of evidence tending to sustain the theory of the defense, it was the constitutional right of the prisoner to have the jury determine whether he was in fact and law criminally responsible for the heinous act for which he was being tried. The court is given no authority to decide as to the effect or sufficiency of evidence submitted to the jury upon such an issue. *Dick v. State,* 107 Md. 11, 68 A. 286, 576; *Jessup v. State,* 117 Md. 119, 83 A. 140." We are not authorized to disturb the finding of the trial court on Washington's mental capacity as affecting his guilt. We see no reason

to disturb it, as affecting the admissibility of his confession.

The question next arising is whether the refusal of the trial court to grant Taylor's motion for a severance constitutes reversible error. The reasons presented in the motion for severance were: That Taylor being an infant fifteen years of age, his defense will be imperiled by a joint trial with the other defendants who are of more mature years; Taylor's defense will probably be affected adversely by the antagonistic defense relied on by the other defendants; Taylor will be affected adversely by Washington's special plea of not guilty by reason of insanity; if the confessions of one or more of the co-defendants made out of Taylor's presence are offered in evidence it may prejudice a jury against Taylor despite any admonitory instructions to the contrary. Washington being sixteen years of age was only one year older than Taylor. In this case both elected to be tried by the court. Washington's counsel refused to allow him to testify as a defense witness for Taylor on the grounds that Washington might thereby incriminate himself which, of course, Washington's counsel had a right to do. It was said by this Court in the case of *Kinnard v. State*, 183 Md. 377, at pages 380 and 381, 38 A. 2d 92, 93, quoting from *Wolfson v. United States*, 5 Cir., 101 F. 430, 435, on the question whether one co-defendant is competent to testify against another co-defendant in a joint trial under a joint indictment, "When any defendant chooses to testify, the statute permits him to do so. It does not matter whether his testimony is for or against himself, or for or against his co-defendant. The only limitation in the statute is that he shall not be made a witness except on his own request." If the trials had been severed Washington would still have had this same right.

In the case of *Commonwealth v. Millen et al.*, 289 Mass. 441, 194 N. E. 463, three defendants pleaded insanity. The court there held that the question whether separate or joint trials shall be granted rests in the sound discretion of the trial court and that a refusal to grant the

severance was no abuse of discretion. In *Neal et al. v. State*, 214 Ind. 328, 14 N. E. 2d 590, 591, 15 N. E. 2d 950, two men were indicted for murder. Both entered special pleas of insanity. The court there held the denial of a motion for severance in the absence of a showing of other facts disclosing that such denial amounted to an abuse of discretion on the part of the trial court, was no error. In the case of *People v. Snyder*, 246 N. Y. 491, 159 N. E. 408, two defendants were jointly indicted for murder. One defendant moved for a separate trial. It was there held that the denial of the motion for separate trials was not reversible error because of the fact that the State had secured admissions from each defendant, which it would claim constituted confessions. In the case of *People v. Wood*, 306 Ill. 224, 137 N. E. 799, several defendants were indicted for murder. The court there held that the general rule was that those indicted jointly for the commission of a crime are to be tried together. The matter of granting a separate trial was within the discretion of the court. Where the fact that two of the codefendants had admitted their guilt and implicated another defendant in their confession, the denying of a separate trial was not an abuse of discretion where the court instructed the jury that the statement of a codefendant admitted in evidence was not evidence against the other.

The court in the instant case stated that each confession would be received only as evidence against the person making it. This practice has been followed many times by the trial courts and approved by this Court. *Markley v. State, supra; Jackson v. State*, 180 Md. 658, 26 A. 2d 815; *Jones v. State*, 185 Md. 481, 45 A. 2d 350; *Demby and Peters v. State, supra*. This Court has many times said that the matter of a severance is one within the sound discretion of the trial court and, unless that discretion is abused, the action of the trial court is not reviewable here. *Gray v. State*, 173 Md. 690, 195 A. 591; *Jones v. State, supra*.

In *Smith v. State,* 106 Md. 39, 66 A. 678, several persons were indicted for burglary committed jointly. One pleaded guilty on arraignment and four pleaded not guilty. It was there held that the granting of a motion for severance was entirely within the discretion of the trial court and under the circumstances of that case this Court found no abuse of discretion. That case is similar, on the question here presented, to the instant one where Washington pleads not guilty by reason of insanity and Taylor pleads not guilty. We are unable to find that the trial court abused its discretion in denying Taylor a severance.

As to appellant Taylor's contention that the verdict was contrary to the weight of the evidence, we have only to say that in this case the trial judges were sitting as a jury and the legal sufficiency of the evidence and the weight of the evidence was a matter for their decision and is not reviewable by this Court on appeal. *Meyerson v. State,* 181 Md. 105, 112, 28 A. 2d 833; Md. Const., Art. 15, Sec. 5; *Demby and Peters v, State, supra.*

The propriety of the sentences imposed is not before us. It is not within our power to pass upon them except as to their legality. If this sentence was too severe under all the circumstances of the case, the appeal on that question is not here. This Court said in *Duker v. State,* 162 Md. 546, at page 548, 160 A. 279: "The sentence was of undeniable legality, imposed by the tribunal to which alone the law looks for the decision as between the two alternative penalties, and this court could not interfere with it on the ground urged without usurping the functions of the court of original jurisdiction." See also *Walker v. State, supra,* where it was pointed out that the imposition of the death penalty was not a cruel or unusual punishment within the scope of constitutional prohibition.

As we find no error the judgments will be affirmed.

*Judgments affirmed, with costs.*