## WILLIAM EDGAR SMITH AND DAVID LEE WHISMAN *v.* STATE OF MARYLAND

[No. 176, Initial Term, 1967.]

*Decided September 26, 1967.*

The cause was argued before MORTON, ORTH, and THOMPSON, JJ., and CHILDS, J., Associate Judge of the Fifth Judicial Circuit, specially assigned, and PRETTYMAN, J., Associate Judge of the First Judicial Circuit, specially assigned.

*William B. McDonald* for appellant Smith, and *Joseph E. O'Brien* for appellant Whisman.

*Richard M. Pollitt, Special Attorney,* with whom were *Francis B. Burch, Attorney General, Leonard T. Kardy, State's Attorney for Montgomery County,* and *Charles C. Futterer, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

CHILDS, J., delivered the opinion of the Court.

William Edgar Smith and David Lee Whisman were both indicted in Montgomery County on the charges of rape, assault with intent to rape and assault. They were tried together before a jury and on June 10, 1966, Whisman was found guilty of rape, and Smith found guilty of assault. On this joint appeal, Whisman contends that he was denied his constitutional right when the presiding judge denied his request for removal, while Smith contends (a) that he was denied due process of law because of the denial of Whisman's request for removal, (b) that the lower court's refusal to sever his trial from Whisman's trial was arbitrary under the circumstances of this case, and (c) that he was denied due process of law as a result of prejudicial remarks made by the trial judge.

On the first day of the trial, Whisman's counsel presented Judge Shure with a handwritten document which read:

> "Comes now the Defendant, David Lee Whisman and suggests to this Honorable Court, that he cannot have a fair and impartial trial in this county and requests that the matter be removed to another jurisdiction for trial.
>
> s/ David L. Whisman
> Subscribed and sworn this 7th day of June 1966
> s/ Clayton K. Watkins."

After both of the accused had entered pleas of not guilty the Court directed Whisman to take the stand and the following colloquy took place:

> "THE COURT: Let the record show that I called this man to inquire into the affidavit which was handed to the Court at ten minutes after ten on the day of the trial.

## Examination by the Court

Q I show you this signature and ask if that is your signature?

A Yes.

Q And in whose writing is the rest of this paper? Not your signature, but the rest.

A I don't know.

Q You don't know?

A No—Mr. Brown.

Q Who gave it to you?

A Mr. Brown.

Q And have you read it?

A No, sir.

Q You have not read it?

A No, sir.

Q Well, then, of course, you don't know what is in it if you haven't read it?

A No, sir.

THE COURT: All right; we will proceed.

Obviously, the man doesn't know what was in the affidavit. The Court is going to ignore it entirely *and take proper action later with respect to it.* (Italics by this Court)

MR. BROWN: Did Your Honor ask him if he could read?

THE COURT: Mr. Brown, he signed an affidavit and didn't know what was in it. This is sufficient.

Would you like to inquire further?

MR. BROWN: He didn't read it; I read it to him.

THE COURT: Mr. Whisman, do you know what is contained in this affidavit?

Let the record show that he indicates by nod that he does not.

MR. BROWN: If Your Honor please, for the purpose of the record, I want to say that I feel that the affidavit is in perfect order in view of the development in this matter which took place yesterday afternoon.

I wrote the affidavit for the accused and asked one

of the Clerks to take him before the Clerk of the Court and swear to the affidavit. The affidavit is in my hand and was prepared at the Counsel table just a few moments ago.

THE COURT: Would you remove all the jurors from the Courtroom, please, so that we don't have anything that might be interpreted as prejudicial.

All the jurors please leave the room.

(All jurors are excluded from the Courtroom.)

Now, Mr. Brown, do I understand that you prepared this affidavit and had this man swear to it in view of what he now tells me that he doesn't know what was in the affidavit and he had not read the affidavit?

MR. BROWN: I prepared the affidavit and I spoke with the boy and his father in the hall and I said to him, 'David, I think the case ought to be removed; what do you think about it?' I said, 'This lady has signed a letter that says that she does not want to testify in the case and the Court has said that we are going to go ahead regardless or in spite of it.' He said, 'Mr. Brown, I'll leave it to whatever you think.' "

And after extended discussion with counsel Whisman was recalled.

"Q Now, you heard what your attorney has just said. He said you left it up to him.

Do you feel that you cannot get a fair and impartial trial in this county? Do you, yourself, feel that?

A I don't know.

Q Well, why do you think you could not get a fair and impartial trial in this county? Give me some of the reasons. I will be glad to hear and consider it.

A No reason.

THE COURT: All right, sir; step down.

(Witness is excused.)

THE COURT: You have heard the proceedings and you know the consequences thereof, Mr. Brown, just

as well as I do. Do you think this is a bona fide affidavit that you want to be filed in this case?

MR. BROWN: I do.

THE COURT: Mark it filed, Mr. Clerk."

Whisman's case was thereupon ordered removed and the jury selection proceeded in Smith's case. However, after a recess the judge announced that he had concluded the affidavit was invalid and would proceed to try both defendants as scheduled. Counsel then moved for severance on behalf of Smith. The motion was denied. On the morning of the second day of trial Whisman's motion for mistrial grounded on the failure to remove and questioning in front of prospective jurors was filed and denied. Later the same day, the motion was twice reasserted and denied. Likewise, a motion for a new trial on the same grounds was denied. This appeal followed.

## I.

In argument, the State candidly admitted that it felt that the trial judge fell into error in refusing to remove, and we agree. Article IV, Section 8 of the Maryland Constitution provides that in capital cases when a suggestion is made in writing under oath of either of the parties thereto that such party cannot have a fair and impartial trial, the court shall order the proceedings removed to some other court having jurisdiction. We are not persuaded that it is improper for counsel to suggest to his client such factors, real or fancied, which he may consider to exist and which in the opinion of counsel may militate against a fair and impartial trial. As in this case, events may transpire between court and counsel of which the accused is not aware and even less understands. To deprive the accused of such valuable assistance which could mean the difference between life and death is, we think, tantamount to depriving the accused of his right to effective assistance of counsel in a crucial stage of his trial and a denial of due process. See *Powell v. Alabama*, 287 U. S. 45.

We realize that the practice lends itself to abuses and is often conducive to delay; however, we are not prepared to say that, in circumstances such as were present in this case, the Constitution requires that the affidavit must be based exclusively upon

personal knowledge of the party actually making it, nor need the affiant precisely understand the reasons behind it.

In capital cases the refusal to grant a removal at any time before the jury panel is completed amounts to a final judgment on a constitutional right and is immediately reviewable. *Heslop v. State,* 202 Md. 123; *Lee v. State,* 161 Md. 430; *Smith v. State,* 44 Md. 530; *McMillan v. State,* 68 Md. 307. It was error, therefore, for the court to proceed to the trial of Whisman in view of the suggestion which had been filed.

We are aware that Maryland Rule 542, adapted from the constitutional provision and made applicable to criminal cases by Rule 738 a, contains the requirement that the suggestion must be of the party to the action *"and not of counsel"* but, assuming *arguendo* its application in capital cases (see Rule 738 b), our construction of this provision is merely that were the suggestion signed by counsel, it would not suffice.

We therefore hold that under the facts in this case, the attempt by the trial judge to exercise discretion in refusing to remove amounted to the denial of a constitutional right of the accused. Appellant Whisman's case must therefore be remanded for a new trial.

## II.

Smith's appeal, although based upon a more tenuous ground, the refusal of the trial judge to grant a severance, also has merit in this instance.

A severance is not a matter of absolute right. It rests within the sound discretion of the trial court, and absent a showing of how the accused was prejudiced, is not ground for appeal. *Slater v. Warden,* 241 Md. 668, 217 A. 2d 344; *Taylor v. State,* 187 Md. 306, 49 A. 2d 787.

Smith and Whisman were jointly represented by two attorneys acting as a team. Since the accused were jointly indicted for a capital offense, each had an absolute constitutional right of removal. Smith therefore had the right to rely upon the belief that Whisman's right to remove the case would be granted if he chose to assert it, and that the trial would proceed, as to Smith, without the hampering influence of Whisman's presence as an alleged partner in crime. When Whisman was nevertheless held for trial, Smith requested a severance on the ground,

that, under the circumstances, he could not receive a fair trial. With the denial of Smith's motion, he was forced to appear to the jury as the cohort of a possible perjurer and as being represented by counsel who not only had been rebuked by the trial judge in the jury's presence but who would be subject to "proper action later."

While it might be said that prejudice under the conditions then prevailing cannot be claimed because Smith could have challenged the array under Rule 744, even a fresh jury unaffected by possible prejudice would not have served Smith's theory of defense. Counsel stated to the court that they felt that Smith should have a panel of jurors divided between men and women, while Whisman should have an all male jury.

As the evidence unfolded, the reason for the desired selection became more apparent. The relationship between the prosecutrix and Smith was far different from that of the prosecutrix and Whisman. On the day of the alleged crime the prosecutrix had made Smith's acquaintance in a tavern. They had visited her apartment where she had changed her clothes within his view, having attired herself in tight, thin slacks with nothing under them. The couple then pursued a peripatetic journey about the county in her car drinking beer and calling upon various persons. Sometime during the course of the day or evening she gave Smith a slip of paper containing her name and telephone number.

On the other hand, the alleged attack took place within a short time of the appearance of Whisman. While Whisman may have found it desirable to be tried with Smith, the latter would find Whisman a distinct hinderance as a co-defendant.

Although we cannot now opine with certainty that the outcome of Smith's trial would have been any different had he been tried alone, we are firmly convinced that it was prejudicial error for the Court to refuse, under the unique circumstances of this case, to grant Smith's motion for a severance. Such being our finding, a new trial must be afforded Smith also.

> *Judgments reversed and cases remanded for new trials.*