## WHITE *v.* STATE
[No. 85, October Term, 1952.]

*Decided February 6, 1953.*

The cause was argued before SOBELOFF, C. J., and
DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Ernest L. Perkins,* with whom was *Donald G. Murray*
on the brief, for the appellant.

*Ambrose T. Hartman, Special Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney
General, Anselm Sodaro, State's Attorney for Baltimore
City,* and *Henry D. Blair, Assistant State's Attorney,*
on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

Leroy White, the appellant, was convicted in the Criminal Court of Baltimore City of the crime of rape. The case was heard by the court sitting as a jury. The only question presented by the appeal is the admissibility of the confession made by the accused.

In the early morning of May 11, 1952, Mrs. Evelyn Goodman, who lives in the Gilmor housing project in Baltimore, heard someone trying the knob of the screen door. Peering through the venetian blind on the door, she saw someone trying to open it, saw his face, and identified him as the appellant, whom she had known as a result of a similar occurrence in 1947. She called the police and gave them White's description, including that of the clothing worn by him. As a result, Officer Boyle of the Baltimore City Police Department, arrested the appellant two blocks away, in a short time. There had been other complaints of various kinds from residents of the housing project, and on May 13, 1952, a line-up was held and four persons picked the appellant from the line-up. White admits that he was involved in some of the complaints but denied knowledge of others.

Sergeant Low of the Baltimore Police, in the course of an investigation of Mrs. Goodman's complaint, searched White's home. In a cabinet he found a pair of checked trousers, which, on a cleaner's mark, bore the name "Hunt".

Mrs. Helen Hunt, the prosecuting witness, testified that she lived in the Gilmor housing project and on the morning of April 28, 1952, was alone in the apartment with her small daughter. She was sleeping in bed, awoke and saw a man standing over her. She identified this man as the appellant. She was frightened and ran into the living room, where the appellant, with his hands at her throat, threatened to kill her if she screamed, and raped her. The appellant then took a pair of her husband's trousers, a radio, thirty dollars in cash and one of her husband's jackets. She identified the trousers, found by Sergeant Low at White's home, as those which

had been taken by him from her apartment. White left through the front door (he had entered through the bathroom window) and placed the radio in front of the door, where it was recovered. Mrs. Hunt called the police immediately and was taken to the Provident Hospital for medical attention. Several days after his arrest, Mrs. Hunt identified White in the police line-up as the man who had attacked her.

Sergeant Andrews of the Baltimore Police Department, took the stand to testify that he had taken a statement from White, which was reduced to writing, concerning the case at bar. Appellant's counsel objected to the statement on the basis that it was not voluntary, and cross-examined the witness to substantiate this objection. Sergeant Andrews testified at some length, saying that White, when first questioned on May 11, denied any participation in the crime, and that on May 12, he also denied any guilt. The interrogation of that day lasted about an hour. He did not talk to White on the 13th of May, but on the 14th, the questioning was resumed about quarter of six in the morning, with Officer Boyle also present. The line-up had taken place on May 13. The method of procedure was to ask White questions and to write down the answers as he made them. All the answers given by White were written down. Andrews' testimony was that the pair of trousers which belonged to Mr. Hunt were shown to White and that as a result, he said, "I might as well tell you what happened. You got me. They came out of the woman's— I don't know her name. I believe it is Hunt. I was in her apartment. I had intercourse with her. She told me I could take anything I wanted. . . I took these pants." Sergeant Andrews said he told White that anything he cared to tell he could, and what he told could be used for or against him, but no physical violence was used at any time, and no promises or inducements were made. Officer Boyle corroborated this testimony.

White admits that the three-page statement was signed by him after he had read each page. He says, however,

that the statement was not voluntarily given, but that he was forced to sign it. He complains that for three days he had been questioned concerning the rape and had been subjected to physical violence, characterized by him as being banged, slapped and kicked. He admits that he sustained no bruises or cuts or other damage as a result of the violence to which he says he was subjected. White makes no suggestion that he was not given the opportunity to rest and sleep or that he was kept without food, although he does say that he was questioned in the early hours of the morning.

Sergeant Andrews was recalled to testify that at the preliminary hearing White was asked by the Magistrate whether he had been threatened, promised or beaten, and answered that he had not been. Mrs. Evelyn Goodman testified that she also was present at the Magistrate's hearing and that White had said there that he "signed that statement of his own free will". On cross-examination, she testified that Magistrate Lane asked White whether force of any sort was used upon him and that White answered, "This is my signature and I wasn't forced". This Court has in several recent cases considered and decided the law applicable to the admission of a confession claimed not to be voluntary. It was said in *Taylor v. State*, 187 Md. 306, 49 A. 2d 787, 789: "The admissibility of a confession is usually contested in every serious criminal case. Of course, the burden of proof is upon the State to prove that a confession is fairly and voluntarily made and not obtained by force, threats, or inducements. Every care should be taken not to force or persuade one accused of crime to make statements incriminating one. If he, however, voluntarily makes statements incriminating himself, they are properly admissible in evidence. The trial court in this case, as in others, heard testimony both from the accused and the State as to the admissibility of these statements. They saw the witnesses. They observed their demeanor while on the stand and were able to judge of their credibility. This Court is convinced that the trial judges

did not err in admitting these statements in evidence."

We think that this language is entirely applicable to the question presented in the case before us.

At the argument, it was contended by the appellant, although the point was not relied on in his brief, that he had been held for such a length of time before being taken before the magistrate as to make his confession involuntary and to affront his constitutional rights. This contention has been so recently made and so fully answered in *James v. State,* 193 Md. 31, 65 A. 2d 888; *Grear v. State,* 194 Md. 335, 71 A. 2d 24; and *Edwards v. State,* 194 Md. 387, 71 A. 2d 487, in exhaustive and penetrating analyses of the law and the cases that we do not feel it is necessary, desirable, or appropriate to refish these waters. Suffice it to say that a very careful consideration of all of the circumstances of this case, both as to the manner in which the confession was obtained and the length of time during which the accused was held, leads us to believe that there is less possibility of injury to, or deprivation of, his constitutional rights than in the similar cases just cited. It is to be remembered that in the present case White was accused of a number of offenses, all of which were being investigated by the Police.

He was identified in the line-up on the 13th of May, two days after his arrest, and confessed the following day. It is not complained that after his confession there was an undue delay in taking him before the magistrate. Also, his confession was to a certain extent exculpatory in that while admitting he was at the scene of the crime, he denied that he had raped the prosecuting witness, but rather claimed that the intercourse was voluntary. Since we find the statement admissible it is unnecessary to determine whether it was an admission rather than a confession. Cf. *Ford v. State,* 181 Md. 306, 29 A. 2d 833; *Delnegro v. State,* 198 Md. 80, 87, 81 A. 2d 241, and *Curreri v. State,* 199 Md. 54, 57, 85 A. 2d 454. We agree with the conclusion of the trial court that if the confession were forced and involuntary,

the police would have produced a more convincing, more incriminating, and less inartificial confession than the one which was made.

We find no error in the admission of the confession nor in any other phase of the trial below.

*Judgment affirmed.*